LAND, J.
Plaintiff sued for $6,185.46, of which $4,000.85 represents 25 per cent, of the purchase price of cane delivered under a written contract, and the remainder several items of damages caused by the alleged failure of the defendant to comply with the specifications of the contract relative to the transportation and handling of plaintiff’s cane crop.
The gist of the answer was that, in the latter part of November, 1911, the cane of plaintiff was badly frozen, greatly damaged, and in some instances rendered unfit for the purposes of being manufactured into sugar; that the cane when destroyed was at the risk of the seller, the plaintiff, and the loss occasioned by the freeze was his loss; that after the freeze the defendant refused to accept partially frozen cane under the contract, but notified plaintiff that the company would accept any cane that could be converted into sugar without a loss, and pay him what it was worth as shown by the tests; that after receiving this notice, plaintiff continued to deliver his cane, and defendant received it under this new agreement, had the same tested and approved by the chemists each week, and remitted to the plaintiff every cent his cane was worth for manufacturing purposes.
Defendant filed a supplemental answer, enlarging and amplifying its original answer. •
The cause was tried, and judgment was rendered in favor of the plaintiff for $5,-301.16, with interest and costs. Defendant has appealed.
On April 5, 1909, the defendant by a letter addressed to the plaintiff, proposed a contract for three years covering the cane grown on the Beka plantation belonging to the plaintiff and the Fort St. Leon plantation owned by J. T. Dautrive. The cane was to be transferred from the plantations to the Braithwaite Landing on certain terms and conditions. The letter contains the following stipulations:
“It is well understood that you are to receive the price of 100- lbs of 96-test sugar (on the New Orleans market) and two gallons of molasses for every ton of cane sold and delivered by you to the Braithwaite Landing, with the allowance for barge transportation as provided above.
“It is well understood that we will hold the molasses for your account, making deliveries at Braithwaite Landing, in barrels furnished by you from time to time, as required by you.
“Our Braithwaite factory will furnish all necessary cane slings.
*42 “You will not be restricted in your cane deliveries, as it is well understood that said deliveries will be as large as you wish to make them, provided outside teams are not employed.
“All cane will be settled for each Thursday for the deliveries of the previous week.”
The contract thus proposed, was accepted in writing by the plaintiff, and was carried out by the parties without friction or dispute during the years 1909 and 1910, and until the latter part of November, 1911, when a freeze occurred in the sugar sections of the state.
On December 9, 1911, the defendant wrote to the plaintiff as follows:
“We find that all cane received last week was unsound on account of freezes to which it had been subjected. We propose to dock all cane received last week twenty-five per cent, and settle for same on a seventy-five per cent, basis. We shall adjust all or any part of the difference at a later date if factory results justify a fuller settlement.
“We further reserve the right to make such deductions for future deliveries that conditions may justify, in view of the fact that all cane has been frozen and is no longer sound.”
Plaintiff replied:
“I will continue to ship my cane in strict accordance with our written contract of date April 5, 1909. If you deduct any portion of amount due me, as you propose, I will accept your check under protest, leaving the difference to be adjusted at some future time.”
Plaintiff continued to deliver cane, and defendant continued to receive and manufacture it, settling on a 75 per cent, basis. At the end of the grinding season, plaintiff instituted the present suit.
The contention of the plaintiff is that his cane was not injured by the freeze of November 29-30; that he had windrowed most of it before the freeze, and the remainder immediately after the freeze; that if there was deterioration in the cane delivered, it was occasioned by unreasonable delays on the part of the defendant in unloading the barge and transporting the cane to the factory. Plaintiff alleged that such delays caused'him special damages in other respects as set forth in his petition.
The first question in the case involves the construction of the contract between the parties as to the kind of cane to be delivered and paid for at the price stipulated. The contract included the cane crop of 1911; that is, the usual crop of the kind that might be raised on plaintiff’s plantation. The price per ton was based on the market price of a standard grade of sugar. Plaintiff’s first position as shown by his letter of December 13, 1911, in reply to defendants’ letter of the 9th of the same month, was that frozen or unsound cane was deliverable under the contract. We find the same contention in another form in the second paragraph of the brief filed by counsel for the plaintiff; but in the third paragraph it is asserted that the cane was not frozen, and if the same was affected by the cold, it was due to exposure to the weather, owing to the fault of the defendant in not furnishing proper and efficient means of transportation.
In Barrow & Le Blanc v. Penick & Ford, 110 La. 572, 34 South. 691, the syllabus reads:
“The purchaser who pays a sound price is entitled to a sound article. The purchaser of an entire crop of molasses to be manufactured is not bound to receive molasses manufactured from frozen cane, classed on the market as unsound goods.”
We make the following extracts from the body of the opinion:
“On this point we are unable to differentiate this case from that of Peterkin v. Martin, 30 La. Ann. 894, where this court held that, where the sale is made without opportunity of inspection, the purchaser who pays a sound price is entitled to a sound article.”
By agreement between the parties, the cane was delivered, and the plaintiff received, under protest, 75 per cent, of the. contract price.
The next question is, Was the cane frozen on the plantation? The local weather bureau reported the temperature at New Orleans at 31 degrees, and in the surrounding country at 8 degrees to 14 degrees lower.
*44 Meraux testified, that his cane was wind-rowed before and after the freeze, and that it was not frozen, but perfectly good cane. According to his testimony, about 500 tons, on November 27th, about same on November 28th and about 1,200 or 1,300 tons after-wards were windrowed.
Jorda, overseer on the Stanton plantation, testified that he visited the Beka plantation of the plaintiff on December 18, 1911, and on January 6, 1912, and found the cane in the windrows in good condition perfectly good and sweet, and that his examination consisted in breaking the stalks and tasting and smelling them. On cross-examination the same witness testified that the cane on the Stanton plantation was not windrowed; that it was frozen, but not sour or decomposed to the extent of not making sugar; that the tops were sour and were cut off, occasioning a loss of from 20 to 25 per cent.
The Beka and Stanton plantations are on the west side of the river, near each other, and the temperature must have been the same on both.
Kearney, who had been a sugar planter and manager for many years, testified substantially, as follows:
Kearney visited the Beka plantation on January 6, 1912, and made an examination of some of the cane on the place, and found it in very good condition. He found many stalks not injured at all; the eyes were perfectly good on them. Some of the cane was windrowed, and some was cut and covered. Kearney was engaged in raising cane on the Stanton plantation, situated about two or three miles from the Beka plantation. The cane on the Stanton place was left standing after the freeze, but was cut and ground as fast as practicable, and there was not much deterioration in the cane. Kearney found some acidity in the top joints of the cane on the Beka plantation, but did not consider the cane bad on that account.
Beka and Stanton are protected to some extent against freezes by their location on the Mississippi river. Kearney had seen cane killed in' the bud on a plantation on the east side of the river, while the cane on Beka and Stanton was still green. Of course, he knew nothing of the condition of the cane which was removed prior to January 6, 1912.
Norman, manager of the defendant, testified that cane in that section was frozen on November 29-30, 1911, and began to deteriorate within the next five or six days; that he visited the Beka plantation on December 8, 1911, and found 30 acres of standing cane in poor condition, and suggested to plaintiff’s brother to windrow the cane, as it was getting sour at the top. On this'visit Norman did not examine the cane in the windrows, but further testified that the cane delivered by Meraux to the factory was very poor, some of it worse than cane left by defendant in the field.
Ten chemical tests of the juice of defendant’s cane as delivered at the factory showed that it was of a very poor quality.
That there was freezing weather on November 29-30 in the section in question, is proven by the evidence beyond dispute. How did plaintiff’s cane escape?
Mr. Morse, the sugar chemist of the defendant, testified that the extra acidity of the cane caused the falling off of the sugar product per ton from 167.44 pounds to 106.74 pounds, and that in a normal season the sugar product per ton of cane increases rather than diminishes in December and January. The same witness further testified that the plaintiff’s cane, from the tests made, was worth $2.72 per ton, or 59.12 per cent, less than it was before the freeze, and that more than 600 separate tests were made of cane delivered at the factory, showing a very *46 large depreciation in every instance. In the case of Mr. Dautrive, a neighbor of the plaintiff, the depreciation was also 59.12 per cent.
It appears from the evidence that the juices were taken and analyzed, and a record was kept in the ususal manner. Unless we presume that there was a conspiracy against all customers, to falsify the records of the factory, the payments plaintiff has received on the basis of 75 per cent, have more than doubly compensated the value of his cane. We are satisfied that most of plaintiff’s cane was frozen. If so, he must recover on a quantum meruit or not at all.
We may add that, as the juice of frozen cane does not turn sour until fermentation takes place, the testing of cane by smell and taste after a freeze is no proper index of its condition when delivered at the factory. Mr. Morse testified that the defendant’s tests were made according to the practice of all up to date sugar factories in this and other countries.
It is therefore ordered that the judgment below be reversed, and it is now ordered that the plaintiff’s suit be dismissed with costs.
PROVO STY, J., takes no part, not having heard the argument.