LAND, J.
 

 On April 19, 1918, J. P. Hudson’s Sons .Company agreed to sell to the Godchaux Company all of. the sugar cane then growing on their lands in Pointe Coupee parish. Godchaux Company agreed to pay for the cane, per ton of 2,000 pounds, 95 cents per ton for each cent, and fraction thereof, in proportion of the weekly average price of prime yellow clarified sugar, as sold on the New Orleans sugar market during the week of delivery; the weekly average price to be established by the secretary of the Louisiana Sugar and Bice Exchange of that city.
 

 It was further agreed between plaintiff and defendant companies that should the average test for the season of the cane, as established by' the average weekly tests as reported by the Elm Hall factory, be 10% per cent, sucrose or better, the price per ton should be $1 instead of 95 cents, for each cent and fraction thereof, in proportion of the weekly average price of prime yellow clarified sugar, sold on the New Orleans market; that the price to be paid was f. o. b. cars at the shipping point, Leavel Spur in Pointe Coupee parish; and that defendant company should pay the freight.
 

 The cane sold to defendant company was to be sound in every respect and properly cut.
 

 The delivery of the cane was to start not later than October 25, 1918, and was to be completed at the Elm Hall factory of defendant company not later than January 5, 1919.
 

 Beginning with the week commencing October 26, 1918, and closing with the week ending November 16, 1918, plaintiff company delivered to defendant company 695.955 tons of cane.
 

 After November 16, 1918, plaintiff company shipped to defendant company 3,690.-920 tons of cane, which were received by defendant company, and out of this last shipment 534.995 tons were rejected entirely, aft
 
 *915
 
 er being ground, leaving a balance of 3,155.-925 tons.
 

 In the present suit, plaintiff company demands of defendant company the payment of $15,119.12, with 5 per cent, interest thereon from February 1, 1919, until paid, in settlement of these cane shipments.
 

 The items upon which plaintiff's demands are based are as follows:
 

 (1) Wrongful deduction by defendant from N. O. market price of sugar, as fixed by the secretary of the Louisiana Sugar & Bice Exchange, of 0.1425 cents per ton on 695.955 tons of cane shipped before November 16, 1918, and of 0.19 cents per ton on 3,155.925 tons of cane shipped after November 16, 1918, and amounting to $698.79.
 

 (2) Balance due plaintiff of $1, instead of 95 cents, for 10% per cent, sucrose content on average test of 2,878.765 tons of cane shipped before January 4, 1919:
 

 (a) On 927.875 tons shipped before November 23, 1918, at .4312 cents per ton, average price of sugar on New Orleans market being 8.624 cents net per pound...........$ 400.10
 

 (b) On 1,950.890 tons shipped after November 30; 1918, and before January 5, 1919, at . .4165 cents net per ton, average price of sugar on the New Orleans market being S.33 cents net per pound.................. 812.54
 

 Total......................................$1,212.64
 

 ‘Less credit of amounts previously paid.. 1,184.78
 

 Balance...................................$ 27.86
 

 (c)Amount due plaintiff of $1, instead of 95 cents, for 10% per cent, sucrose content on average test of 973.115 tons shipped after January 5, 1919, but test not reported to plaintiff by defendant company, aver- ■ age price of sugar 'on New Orleans market being 8.33 cents net per pound...........$ 405.30
 

 (3) The value of 534.995 tons of cane received by defendant company, passed through its mill and the juice ditched after grinding, average price of sugar on New Orleans márket being 8.33 cents net per pound, $4,456.51.
 

 (4) For wrongful deduction of freight charged upon the 534.995 tons of cane which had been ditched, $506.91.
 

 (5) For wrongful deduction of 15' per cent, of the value of 755.40 tons of cane delivered to defendant company, under a claim of damage to that extent by a freeze, $875.14.
 

 (6) For wrongful deduction of 50 per cent, of the value of 21S.67 tons of cane delivered to defendant company, under a claim of damage to'that extent by a freeze, $844.39.
 

 (7) For difference in value of 1,056.94 tons of cane, refused by defendant company after January 22, 1919, and sold by plaintiff to Wilbert’s Myrtle Grove Planting & Manufacturing Company at 95 cents, without 10% per cent, sucrose content differential, $440.22.
 

 (8) For damage to 800 tons of cane lost by a freeze, under a claim that defendant company failed and refused to deliver cars properly racked to receive 160 tons per day, as required by contract between the parties, average price of sugar on New Orleans market being 8.33 cents net per pound, $6,664.
 

 (9) For loss of wages of employees kept idle while waiting for necessary cars to load the cane at the rate of 160 tons per day, $200.
 

 The lower court allowed plaintiff to recover amounts as follows:
 

 'Item 1. Deductions made by defendant of broker’s commission from market price of sugar as fixed by the secretary of the Louisiana Sugar and Rice Exchange........................$ 698.79
 

 Item 2 (c) Amount due plaintiff on account of 10% per cent, sucrose content of 973.115 tons of sugar shipped after January 5, 1919.............. 405.30
 

 Item 3. Value of 534.995 tons of cane that was ditched ............................... 4,456.51
 

 Item 4. Freight on above cane................ 506.91
 

 Total ...................¡................. $6,067.51
 

 1. The written contract between plaintiff and defendant expressly declares that the price to he paid for the cane delivered shall he:
 

 “Ninety-five (95) cents per ton for each cent and fraction thereof in proportion, of the weekly average price of Prime Yellow Clarified sugar as sold on the New Orleans sugar market during the week of delivery; said weekly average price to be established by the- secretary of the Louisiana Sugar and Bice Exchange of New Orleans.”
 

 The contract in the present case is identical with that in the case of Le Blanc v. Godchaux Co., Inc., 152 La. 405, 93 So. 201, in which it was held that, although it was permissible for a producer of sugar to pay a specified amount to dealers or brokers for its sale, such allowance was a mere commission; and not a reduction in price, and could not he deducted from the price stated in the cer
 
 *917
 
 tificate issued by the secretary of the Louisiana Sugar and Rice Exchange of New Orleans.
 

 This issue was thoroughly considered in the Le Blanc Case. We are still convinced of the correctness of that decision in refusing to permit the government price of sugar, fixed on exchange as a war measure, to be reduced by the brokerage commission allowed by the seller, and, as reduced, to be made the basis of the price to be paid the planters for cane. The defendant company therefore had no right to deduct in this case brokerage, or any other charge, from the price of the sugar as fixed under the terms of its cane contract with plaintiff, who is entitled to recover upon the basis of full exchange price of sugar at the time. There is no dispute as to the amount deducted, and the price of sugar at the time is also clearly established.
 

 Item 1 of $698.79 was properly allowed.
 

 2.The contract between the Louisiana producers of sugar and the Food Administrator, provided for by section 2 of the Food .Control Law, Act of Congress August. 10, 1917 (U. S. Comp. St. § 3115%ee), constituted considerably more than a mere voluntary agreement between the contracting parties as to the price of sugar. It was a war measure —a forced market price fixed by the government — and was necessarily the only price actually prevailing upon the sugar exchange of New Orleans.
 

 • , It is true that plaintiff company was not primarily a party to this contract. This is immaterial, however, as the contract between plaintiff and defendant companies is the law of the case between them, and has made the price of the cane to be delivered dependent entirely upon the market price of sugar, as forced and fixed by the government, and as certified by the secretary of the Louisiana Sugar and Rice Exchange of New Orleans.
 

 It is idle, therefore, to contend in this case that, if there was a breach of the contract by defendant company, plaintiff cannot complain as he was not a party to the original .contract between the government and the sugar producers of the state.
 

 3. We find no good reason why plaintiff should not recover the balance of $27.86 due him on item 2 (a and b), as this sum is for additional amounts due for price of 5 cents based on sucrose content. It is a mere matter of calculation, as the evidence sustains the claim.
 

 4. Item 2(c) is a claim for $405.30 for the additional 5 cents per ton on 973.115 tons of cane, on the ground that the cane tested 10% per cent, sucrose content, and should have been settled for on a basis of $1 instead of on a basis of 95 cents per ton, without sucrose content.
 

 We are not dealing here with unsound cane, caused by a freeze. The cane was paid for by defendant company at the rate of 95 cents per ton.
 

 The contract between plaintiff and defendant provides:
 

 “That should the average test for the season of the said cane, as established by the average weekly tests as reported by the Elm Hall Factory, be ten and a half per cent. (10%%) sucrose or better, the price per ton as above shall be one dollar ($1.00) instead of ninety-five cents (95^).”
 

 The 973.115 tons of cane were delivered to defendant after January 4, 1919. Notwithstanding written demands made by plaintiff on December 4, 1918, and January 4, 1919, asking for tests of cane, defendant has failed and refused to report any tests as to this particular shipment of cane, although tests were furnished by defendant up to January 4, 1919.
 

 The defendant, under its contract, is bound to furnish the evidence to plaintiff as to these tests, and to pay plaintiff an additional price of 5 cents if the sucrose content is 10% peícent. or better. As such evidence is wholly
 
 *919
 
 in defendant’s possession and under its control, it must be assumed that defendant company has declined to produce the tests as to this particular shipment, because the evidence is against it.
 

 The failure of a litigant to produce proof within his reach creates a presumption that it would be prejudicial to his ease, and this presumption is strengthened when the evidence is in his possession and has been called for by his adversary by a demand upon him to produce it. Bastrop State Bank v. Levy, 106 La. 591, 31 So. 164; Johnson v. Levy, 109 La. 1036, 34 So. 68; Hannay v. N. O. Cotton Exchange, 112 La. 1007, 36 So. 831.
 

 Item 2(c) was properly allowed to plaintiff.
 

 5. Items 3, 4, 5, 6, and 7 arise under a claim by defendant that some of the cane was frozen and wholly unfit for -manufacture into sugar, or that the contract, price was reduced because of deterioration of the cane delivered.
 

 Defendant company began the operation of its sugar mill or refinery located at Elm Hall in the parish of Assumption on October 18 or 19, 1918.
 

 Plaintiff did not begin delivery of cane under the contract until October 26, 1918, although notified prior to commencement of operations by defendant that it was advisable to make deliveries as early as possible since the crop was very heavy.
 

 On December 26, 27, and 28, 1918, a freeze occurred. At St. Francisville; the nearest station to the plantation of plaintiff, the thermometer went as low as 23 degrees.
 

 Another freeze followed on January 3, 4, and 5, 1919, the thermometer going as low as 18 degrees at St. Francisville.
 

 It is true that plaintiff’s cane was wind-rowed, but this fact in itself does not insure uniformity as to the good condition of the cane as a whole. There may be cane in the same field that is not as badly damaged as other cane, depending entirely upon its location, exposure, etc.
 

 It is conceded that frozen cane deteriorates and that the juices may become too acid for manufacture into sugar.
 

 The contract binds plaintiff “to load on board cars all said cane which shall be sound in every respect and properly cut,” and stipulates that the delivery of the cane is “to be completed no later than the 5th day of January, 1919.” .
 

 It is elementary that plaintiff must show that he has complied with the terms and conditions of his contract before he can recover the items sued for as damages. Silverman v. Caddo Oil & Gas Co., 127 La. 928, 54 So. 289; Sitman & Burton v. Lindsey, 123 La. 53, 48 So. 646; Shreveport Cotton Oil Co. v. Friedlander, 112 La. 1059, 36 So. 853; Murphy v. Southern Mineral & Land Improvement Co., 130 La. 914, 916, 58 So. 766.
 

 Item 3 of $4,456.51 is for the value of 534.-955 tons of cane that was ditched. The evidence produced by defendant shows that the cane was frozen and worthless. Moreover, plaintiff was in default as to the delivery, as this shipment was not made until after January 5, 1919.
 

 Plaintiff contends that because the defendant accepted this shipment and passed the cane through its mill, defendant should pay plaintiff the contract price agreed upon. Plaintiff is demanding a sound price for cane that had been subjected to two severe freezes in one season.
 

 “The purchaser who agrees to pay a sound price for a crop of sugar cane cannot be compelled to accept frozen cane under the contract.” Meraux v. Kenilworth Sugar Co., 135 La. 39, 64 So. 974, syllabus.
 

 “A contract for the purchase of sugar cane, at a sound price, entitles the purchaser to a sound article.” Bigman v. Lorio, 135 La. 285, 65 So. 266, syllabus.
 

 In the syllabus to the Bigman Case it is said:
 

 “There seem to be three ways of determining whether sugar cane which has been frozen has become sour; the one, by splitting and tasting
 
 *921
 
 it, another by chemical analysis of the juice, and the "third, by attempting to make sugar of it, and the fact that cane offered, under contract, may stand the test first mentioned, which is, at best, uncertain, does not preclude the purchaser from invoking the other tests, or disentitle him to have his rights determined thereby; nor does the fact that he offers a reduced price for cane, instead of rejecting it entirely as unsound, justify the conclusion that it is sound, and should, be accepted at the contract price for sound cane.”
 

 The superiority of chemical tests over all others is recognized in the Meraux Case, in which it is stated:
 

 “We may add that, as the juice of frozen cane does not turn sour until fermentation takes place, the testing of cane by smell and taste after a freeze is no proper index of its condition when delivered at the factory.” 135 La. page 45 (64 So. 976).
 

 The chemical tests of the juice of plaintiff’s cane as delivered at the factory showed that it was worthless. Defendant company was clearly within its rights in making such tests, under the authority of the ■ Meraux Case, in which it is also stated:
 

 “It appears from the evidence that the juices were taken and analyzed, and a record was kept in the usual manner. Unless we presume that there was a conspiracy against all customers, to falsify the records of the factory, the payments plaintiff has received on the basis of 75 per cent, have more than doubly compensated the value of his cane. We are satisfied that most of plaintiff’s cane was frozen. If •so, he must recover on a quantum meruit or not at all.” 135 La. 45 (64 So. 976).
 

 There is no suggestion in the case at bar as to fraud in making the chemical analysis, or as to falsification of the records kept by defendant company.
 

 Item 3 of $4,456.51 for the value of cane ditched should have been rejected.
 

 As the cane shipped was of no value for manufacturing purposes, defendant should not be made to pay the freight on this shipment, and item 4 for freight on same, amounting to $506.91, should have been rejected also.
 

 6. Items 5 and 6 were properly disallowed by the trial judge. Item 5 is for $875.14 for a deduction of 15 per cent, on the price of 755.40 tons of cane loaded during January 4 to January 11, 1919. Item 6 is for $844.39 for a deduction of 50 per cent, on the price of 218.67 tons of cane .loaded January 11 to January 18, 1919.
 

 These shipments of cane were loaded after the second freeze of January 3, 4, and 5, 1919. The Supreme Court has recognized the superiority of chemical tests of the juices of frozen cane over other methods, and will not assume that the records of a sugar factory, kept in the usual way, are incorrect or fraudulent. Meraux v. Kenilworth Sugar Co., 135 La. 39, 64 So. 974; Bigman v. Lorio, 1S5 La. 285, 65 So. 266.
 

 There is no evidence in the record sufficient, in our opinion, to overcome the effect that must be given to the chemical tests made, of the frozen cane in this ease. It is shown by such tests to be deteriorated in different degrees.
 

 The mere fact that plaintiff at or about the same time, or afterwards, may have sold other cane to Wilbert’s Company, and that it was accepted without objection, is not sufficient to destroy the verity of the tests made. The same tests were not applied by the two companies, and the evidence fails to show that the windrowed cane sold was all in the same condition. The reduction of the price in each of the above items appears to be justified by the facts of the case.
 

 7. For these reasons, the lower court properly rejected also item 7 of $440.22, loss on 1,056.94 tons shipped by plaintiff to Wilbert’s Company, or the difference between the contract price and what Wilbert’s Company paid.
 

 Had the same tests been made, evidence as to a like condition in all of the cane tested by Wilbert’s Company and defendant company would still be wanting.
 

 8. Items 8 and 9 are not sustained by the
 
 *923
 
 facts of the case. Item 8 is for loss of SOO tons of cane left in the field, due to lack of cars. Item 9 is for loss in time, wages, etc., due to delay in obtaining cars. We fail to find from the evidence that such losses were due in any way to fault upon the part of defendant company.
 

 The railroads were under federal control. Freight traffic was greatly congested, and defendant could do no more than make requisitions for cars.
 

 It appears that after the cars were on hand, there was delay on part of plaintiff, in some cases, in loading cars. We do not find, however-, that plaintiff was necessarily at fault in the matter.
 

 The fall of 1918 was extremely wet. There was an epidemic of influenza among the 'laborers on plaintiff’s plantation. There was also a scarcity of cars for transporting the cane, due to war conditions. Labor was scarce also.
 

 There were mutual and unavoidable delays in harvesting and delivering the cane crop of plaintiff to the factory of defendant company.
 

 Items 8 and 9 were properly rejected.
 

 We see no good reason for increasing the judgment in- the case to the amount sued for, as prayed for in the answer to the appeal filed by plaintiff.
 

 ■It is therefore ordered that the judgment appealed from be amended in the following particulars:
 

 1.So as-to allow balance of $27.86 due on item 2 (a and b) in the opinion, based on sucrose content.
 

 ■ 2. So as to reject item 3 in the opinion for the value of 534.995 tons of cane which were ditched.
 

 3. So as to reject item 4 in the opinion, the amount of freight on the above cars.
 

 It is nbw ordered that the judgment, as amended, be affirmed; that appellee pay the costs of.appeal; and that appellant pay the costs of the lower court.
 

 OVERTON, X, concurs in decree.
 

 O’NIBLL, O. X, dissents from the rulings on bills on items 3, 4, 5, and 6.