HARDY, Judge.
This is a suit hy the widow and heirs of Everett Jackson, who pray to be declared owners of a certain described 120 acre tract of land in Ouachita Parish, subject to a mortgage granted by the said Everett Jackson in favor of one D. P. Golson by instrument dated March 30, 1925. Named as defendants were the heirs of D. P. Gol-son and other parties who were owners of mineral rights and interests in and under the property described.
This matter has already been before this court on appeal by plaintiffs from judgment of the district court sustaining defendants’ exceptions of no cause and no right of action and a plea of prescription of ten years acquirendi causa, and dismissing plaintiffs’ suit. This court reversed the judgment as to the defendants, the Golson heirs, sustained the exception as to the defendants asserting mineral interests and remanded the cause to the Fourth Judicial District Court in and for Ouachita Parish for further proceedings; Jackson v. Golson, La.App., 91 So.2d 394. Following remand the case was tried on the merits, and, after trial, there was judgment rejecting plaintiffs’ demands, from which they prosecute this appeal.
No appeal has been taken with respect to that part of the judgment dismissing plaintiffs’ suit as against the holders of mineral rights and interests, and, as a consequence, the only defendants now before the court on appeal are the Golson heirs, who claim ownership of the property involved.
*878 Reference to the written opinion of the district judge discloses the fact that he sustained defendants’ pleas of prescription and estoppel as the basis for judgment.
For the sake of clarity, we recapitulate the factual circumstances pertinent to a consideration of the appeal, despite the fact that this will be somewhat repetitive of portions of the opinion of this court heretofore reported as cited supra.
By deed dated October 31, 1917, Everett Jackson purchased the 120 acre tract of land here involved, went into possession thereof, built a house which became his home, one or two outbuildings, and cleared, fenced and farmed a substantial portion of the property. In or before the year 1925 Everett Jackson’s wife, Fannie, either deserted or was run away from her home by her husband and, thereafter, husband and wife lived separate and apart during the remainder of Everett Jackson’s life. On March 30, 1925, Everett Jackson executed a purported instrument of conveyance to and in favor of D. P. Golson, covering the subject property, which instrument, recorded December 28, 1925, recited a cash consideration of $431.17 and contained a provision vesting in the vendor the right of redemption of the property described at any time prior to January 1, 1926, upon payment of the recited purchase price, together with any taxes or other expenses paid by the named vendee, and interest on the aggregate amount at the rate of 8% per annum.
The record establishes the fact that the above described instrument was taken to Jackson’s home by D. P. Golson sometime after 8:00 o’clock at night on the date shown, at which time Jackson was sick in bed. Shortly after the execution of the instrument Jackson went, or was taken, to a hospital in Shreveport, and, after an indefinite period of treatment, returned to his home, where he resumed the operations of farming, assisted by a 16-year-old son and several younger daughters. Jackson continued to live on the property until sometime in 1930, when he was incarcerated in jail on a charge which has no connection with this case. While Jackson was in jail, on date of May 3, 1930, on complaint of D. P. Golson, Jackson was ordered to appear in court at 10:00 o’clock on the same date and the coroner and another doctor were ordered to appear at the same time. On the same date, May 3, 1930, Everett Jackson was adjudged insane and committed to the Louisiana State Hospital at Pineville. The above proceedings were filed in the Conveyance Records of Ouachita Parish on May 5, 1930, and the certificate of the physicians, which bears no date as to their examination, was filed July 25, 1930. Jackson remained an inmate of the State Hospital at Pineville until his death, which occurred sometime during the year 1931, in which year D. P. Golson also died.
Shortly after the commitment of Everett Jackson, his oldest son, Nathaniel, who was then 19 years of age, removed himself and his three younger sisters to the home of a married sister.
Since trial of the case on the merits plaintiffs have abandoned many of their original contentions, and before this court their counsel have stated the sole issue as follows:
“Did Jackson voluntarily deliver possession of the property to Golson?”
Unquestionably, the issue of possession has important bearing upon the determination of the rights of the parties. Plaintiffs’ principal contention is that if possession was not delivered, prior to the expiration of the redemptive period, the instrument of March 30, 1925, must be construed as an act of mortgage evidencing security for a loan and not as an outright act of conveyance translative of title to the property.
The delivery of possession is an absolute requirement of the translation of title under a deed with the right of redemption. •This principle was unequivocally declared *879 in what is uniformly regarded as the leading case on this issue, Latiolais v. Breaux, 154 La. 1006, 98 So. 620, 621;
“Hence the one test by which to determine whether a contract evidences a real sale with a right of redemption, or a mere contract of security, has ever since been whether the purchaser has gone into actual possession(Authorities cited.) (Emphasis supplied.)
In the cited case the court further clearly stated the effect of the time of delivery of possession:
"From the foregoing it results that the title of the purchaser is perfected by the delivery of actual possession. If that delivery takes place before the delay for redemption has expired, the vendor, of course, preserves his right of redemption. But if the vendor delivers the property after the delay for redemption has expired, obviously the sale then becomes absolute. By such delivery the vendor acknowledges that the thing belongs to the purchaser, and he cannot thereafter be heard to deny the latter’s title thereto.” (Emphasis supplied.)
We find nothing in the record which could possibly support the conclusion that Everett Jackson delivered possession of the subject property to D. P. Golson at any time prior to the expiration of the redemptive period, which was fixed in the instrument as January 1, 1926.
From this factual conclusion it must follow that defendants bear the burden of showing the delivery of possession by Everett Jackson after the expiration of the redemptive period. It must be conceded that a voluntary delivery after such expiration acknowledges and ratifies the effect of the instrument as an absolute sale. The resolution of this proposition depends upon an issue of fact. On this issue the district judge made the following observation :
“The facts further show that Everett Jackson did return from the hospital and remained on the land for some time after the expiration of the time set forth in the Act of Sale for redemption. The testimony further shows that after the expiration of the time set forth in the act for redemption by Jackson that Golson had this property assessed in his name and paid the taxes and also paid the payments as they fell due to the Federal Land Bank.
“The testimony further shows that while Jackson continued to reside in the house on the premises that he did not continue to work the land. The testimony shows that part of the land in question was rented out to other sharecropper tenants by Golson and that Jackson cultivated part of the land' and delivered part of the crops to Golson and that Jackson also rented other land on which to farm from another Golson, who was a cousin of the ancestor of the defendants herein. The Court is at a loss to understand how Jackson could be regarded as claiming ownership of the land in question while he resided in the house when he permitted Golson to rent out the land to sharecroppers and he was forced to rent other land on which to make his crop. Clearly in view of these facts and the fact that the land had been assessed to Golson and he was paying the taxes and payments due the Federal Land Bank, it is clear that Jackson realized that he was no longer the owner of this property after the expiration date had passed for the redemption of same and did not attempt to hold himself out as owner.”
Despite the factual findings above set forth, strangely enough, the district judge did not choose to predicate his judgment upon the voluntary delivery of possession by Everett Jackson, but, instead, based the judgment upon defendant’s pleas of prescription and estopp.el as is set forth in the concluding paragraph of his opinion:
*880 “In view of the above facts the Court thinks that the Plea of Prescription has been borne out by the testimony and that the Plea of Estoppel has been borne out by the testimony and that there should be judgment rejecting the demands of the plaintiffs at their costs.”
We regret that we cannot concur in the factual findings above set forth. As we have above observed, the record does not contain even the slightest proof of a delivery of possession of the property by Everett Jackson to D. P. Golson prior to the expiration period on January 1, 1926. Bearing upon the question of delivery of possession following this date, we note the findings of the 'trial judge with reference to payments of the installments of a Federal Land Bank mortgage and the assessment to and payment of taxes on the property by D. P. Golson.
In 1922 Everett Jackson executed a mortgage in the principal sum. of $800 in favor of the Federal Land Bank of New Orleans. The mortgage note introduced in evidence by plaintiffs shows annual payments made in the month of February for the years 1923, 1924 and 1925, which must be presumed to have been made by the mortgagor. In addition to the regular annual payment which was made in March, 1926, the note evidences an additional special payment made on date of March 16, 1926, in the sum of $127.62, and a letter from the Treasurer of the Bank, directed to Everett Jackson under date of April 20, 1926, which was also introduced in evidence by plaintiffs, shows that this special payment resulted from the application of funds deposited with the Bank “ * * * as substituted collateral * * -
The note evidences the credit of continuing annual payments in the months of February or March for the years 1927 to 1931, inclusive, but the note does not show by whom these payments, and payments for subsequent years, were made. However, the record contains a number of notices setting forth amounts and dates of payments and receipts, all directed to Everett Jackson, as late as February 15, 1929. Additionally, the record contains communications from the Bank directed to Everett Jackson, among which we find the following which appear to be highly relevant to the disputed issue of possession:
1. Letter from the Secretary of the Federal Land Bank to Everett Jackson dated November 13, 1928, the body of which reads as follows:
“We have your letter stating that Field Johnson and D. P. Golson are cutting timber off your property.
“We suggest immediately upon receipt of this letter you call on Mr. J. H. Watkins, Secretary-Treasurer of the Ouachita Valley National Farm Loan Association, Monroe, La., and talk the whole matter over with him.”
2. Létter from the Secretary of the Federal Land Bank to Everett Jackson dated March 1, 1929, the body of which reads as follows:
“Your letter of February 16th was duly received and has been noted.
“We think the best thing to do in order to have this matter settled is to have one of our Land Bank Appraisers inspect your property, look into the matter, and furnish us with a report. We do not know how soon the appraiser will be able to make this inspection, but- we are writing to him today asking that he investigate and advise us.
“We shall expect whatever little expense is incurred by the appraiser in making this inspection to be taken care of by you.”
We cannot conceive that if possession had actually been delivered to and taken by Golson at any time during the period from 1925 to 1929, inclusive, the Federal Land Bank would have continued to look to Everett Jackson for payment of annual *881 installments, received them from him and engaged in correspondence with him as the owner of the property and obligor under their mortgage. Particularly is this true in consideration of the failure of defendants to produce any convincing evidence in relation to this particular matter which would serve to controvert that which was introduced on behalf of plaintiffs. The only receipts produced by defendants evidence the payment of installments for the years 1940 and 1941 and the payment of the balance due on the loan in the year 1942.
As to the tax assessments, there is not the slightest showing that D. P. Golson procured the assessments of the property involved which appear in his name on the tax rolls. By stipulation of counsel it is shown that the property was assessed in the name of D. P. Golson for the years 1926, 1930; in the name of the Estate of D. P. Golson for the years 1935, 1940, 1945 and 1950, and in the names of J. R. Golson et al. for the year 1955. An additional stipulation agrees that the assessment for the year 1925 was made in the name of Everett Jackson. It is to be noted that the assessment in the name of D. P. Golson for the year 1926 could easily be attributed to the recordation of the redemption deed. The assessments for the following years are not shown to have been in the name of D. P. Golson until 1930, the year Everett Jackson was committed to the hospital in Pineville.
Contrary to the findings of the district judge, we are firmly of the opinion that the record fails to sustain the above claims made by defendants and, on the contrary, the evidence preponderates in favor of plaintiffs’ contention.
Finally, the defendants rely in support of their claim of delivery and possession upon the contention that Everett Jackson himself, and others, were lessees of portions of the land involved, as sharecropper tenants of D. P. Golson, after January 1, 1926 and prior to Jackson’s death. We find the record is woefully lacking in adequate evidence of these facts. The testimony of defendants’ witnesses, as to Everett Jackson’s tenancy, is exceedingly vague and unsubstantial, and is stoutly denied by his son, Nathaniel Jackson, who remained on the property until after his father’s commitment. The testimony of the Negro, Rock Young, as to the dates of his tenancy is most uncertain and is denied by a number of' plaintiffs. One of the defendants, F. K. Golson, the elder son of D. P. Golson, testified that he handled his father’s affairs after his death in 1931. Under cross-examination by plaintiffs’ counsel on the issue of payment of rent for several years subsequent to January 1, 1926, by Everett Jackson' to D. P. Golson, the witness specifically testified that the only evidence he had of payments was:
“There is in my possession an old kind of cumulative, book that I found that he received rent one year from a party that rented it in 1928.”
The witness was asked by counsel if he Would produce"the book to which reference Was made, despite which it was not produced.
In the case of Hudson & Sons Co. v. Godchaux Co., 166 La. 912, 118 So. 81, 83, the opinion -of the court contains the following declaration:
“The failure of a litigant to produce proof within his reach creates the presumption that it would be prejudicial to his case, and this presumption is strengthened when the evidence is in his possession and has been called for by his adversary by a demand upon him to produce it.” (Citing authorities.)
We do not think it necessary to apply the above presumption in connection with this item. It suffices to say that the nature and character of the testimony tendered on behalf of defendants with reference to this point is so weak, vague, uncertain and unconvincing as to be completely devoid of any persuasive weight. However, all of *882 the oral testimony on this question may be completely disregarded in view of the fact that the record contains written evidence which completely refutes defendants’ contentions. It appears that D. P. Golson consulted the law firm of Shotwell & Brown of Monroe with reference to his rights and in the effort to obtain possession of the property. As evidenced by a receipt given the Clerk of Court under date of May 21, 1929, the original redemption deed was withdrawn from the conveyance records by Shotwell and Brown, and was never returned. Plaintiffs introduced in evidence the following letter:
“Alden T. Shotwell Shotwell & Brown
Clyde R. Brown Attorneys at Law Monroe, La.
June 6, 1929.
“Mr. Everett Jackson,
Route 2,
West Monroe, Louisiana
“Dear Mr. Jackson:
“Mr. D. P. Golson has consulted us with reference to you/r refusal to move off the land which you deeded to Mr. Golson in 1926 and which you cere now occupying over the protests of and against the wishes of Mr. Golson.
“This is to advise you that unless you vacate this property without further delay and deliver possession thereof to Mr. Gol-son, that he will have no alternative other than to treat you as a trespasser and take action against you accordingly.
“We would suggest that you give this matter your prompt attention and avoid any further trouble.
“Very truly yours,
Shotwell & Brown
By: Alden T. Shotwell”
(Emphasis supplied.)
It does not appear that any further action was taken by the named law firm and neither of the members thereof was called as a witness for defendants for the purpose of eliciting testimony which might have served to throw some light on this issue.
That Everett Jackson did not comply with the above demand is evidenced by the following notice which, according to the testimony of Nathaniel Jackson, was delivered by being placed under a water bucket in Jackson’s home:
“12-31-29
“Everett Jackson
“Dear Sir
“You must get off the place with in ten days or I will have the Sheriff to put your things in road.
“Yours truly
D. P. Golson”
This peremptory demand apparently failed to produce the desired result and Golson’s problem of procuring possession was solved only by the commitment of Everett Jackson on May 3, 1930, on the strength of a complaint executed by D. P. Golson, and the action of the minor children of Everett Jackson in leaving the premises sometime later, which left the way clear for Golson to occupy and exercise possession. It is clearly obvious that if Golson was in possession of the property, as urged by defendants, there was no necessity for the demands made by Golson’s attorneys, and later by Golson himself, upon Everett Jackson to deliver possession.
It is not urged that the removal of the minor children from the property, or the death of Everett Jackson, had the effect of delivering possession to Golson. The principal defense is based upon the averment of the delivery of possession by Everett Jackson either prior to the expiration of the redemption period or at some time subsequent thereto, before the occurrence of Jackson’s death. Inasmuch as the facts do not support either of these claims, it follows that this defense has completely failed.
Proceeding to a consideration of defendants’ plea of prescription of ten years acquirendi causa, it need only be *883 observed that LSA-Civil Code Article 3478 requires the acquisition of the immovable to be in good faith and by just title. We do not think either of these elements has been established in the instant case. In consideration of our holding, as above set forth, that the document purporting to be a redemption deed must be denominated and construed as an instrument of security, in view of the retention of possession by the vendor, it follows that such instrument cannot serve as the basis for the prescription asserted. In this connection, it is further pertinent to observe the specific provision of LSA-Civil Code Article 3485 which declares that prescription may not be acquired under a title derived from a loan, inasmuch as such contract does not transfer ownership.
Finally, defendants rely upon a plea of estoppel, citing as authority Lafitte Dufilho & Co. v. Godchaux, 35 La.Ann. 1161; Strong v. Haynes, 152 La. 695, 94 So. 322, and Fried v. Bradley, 219 La. 59, 52 So.2d 247.
An examination of these authorities discloses that they are utterly dissimilar to the instant case, both as to facts and legal principles involved. Nevertheless, we point out that this case does not involve a mere technicality, but concerns a substantial legal right. It should further be observed that there is no indication that these parties were aware of their rights with respect to the ownership of the property involved and were guilty of laches or intentional failure to take action. We know of no authority for the proposition that the mere passage of time, short of an applicable prescriptive period, is sufficient to sustain a plea of estoppel. In this connection the opinion of Mr. Justice (now Chief Justice) Fournet in Harvey v. Richard, 200 La. 97, 7 So.2d 674, is particularly appropriate. The opinion declared (1) estoppels are not favored by Louisiana courts, and (2) in order to effect an estoppel by silence it must appear that the person had a full knowledge of the facts and of his rights, that he had an intent to mislead or a willingness that others be deceived, and that the other party was misled.
Inasmuch as none of the above elements are established in this case, it follows that the plea of estoppel should have been overruled.
In brief before this court counsel for plaintiffs-appellants suggest that there be judgment recognizing plaintiffs as owners of the property involved, subject to the mortgage of defendants, and that the case be remanded for an accounting between plaintiffs and defendants. We think this purpose could better be accomplished by pronouncing judgment as to the ownership of the property and reserving plaintiffs’ rights to bring a separate action for an accounting.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and
It is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs decreeing them to be the owners, in indivisión, of the property described as
West Half of Northeast Quarter (Wyá of NEj4) and Southeast Quarter of Northeast Quarter (SE of NE 14) of Section Twenty-three (23), Township Seventeen (17) North, Range One (1) East, containing 120 acres, more or less, situated in Ouachi-ta Parish, Louisiana;
in the proportions of one-half to Fannie Foster Jackson and one-twentieth each to Elizabeth Jackson Woodward, Ardella Jackson, Nathaniel Jackson, Issac Jackson, Lottie Jackson Johnson, Amanda Jackson Griffith, Easter Jackson Ingraham, Metha Jackson, Zula Jackson Holliday, and Lydia Jackson Turpin, subject to the usufruct of Fannie Foster Jackson.
It is further ordered, adjudged and decreed that plaintiffs’ rights to bring a separate action against the defendants for an accounting is specifically recognized and reserved.
*884 All costs of both courts are taxed against defendants-appellees.