(93 South. 201)

No. 24759.

LE BLANC v. GODCHAUX ,CO., Inc.

In re LE BLANC.

(June 6, 1922. Rehearing Denied July 17, 1922.)

*(Syllabus by Editorial Staff.)*

1. Sales &=77(1)—Parol evidence inadmissible to contradict certificate by reference to which parties have agreed to fix price.

Where a contract of sale fixed the price by reference to the average price of sugar to be established by the secretary of a sugar exchange, the parties were bound by their agreement, in the absence of fraud, error, or mistake, and parol evidence to contradict the secretary's certificate was properly rejected.

2. Sales &=77(1)—Certificate as to selling price of sugar held to make circular therein mentioned a part thereof.

· Where a certificate of the secretary of a sugar exchange as to the average price of sugar, by reference to which a contract fixed the selling price, stated that an allowance had been made in accordance with a circular of·a sugar committee, the circular was as much a part of the certificate as if set out therein in its entirety.

3. Sales &=77(1)—Under certificate by reference to which price fixed, held that allowance mentioned was brokerage commission, and could not be deducted from price.

Where certificate of secretary of sugar exchange stating the average price of sugar, by reference to which contract of sale fixed the price, stated that an allowance of 20 points had been made in accordance with a circular which provided that producers might pay a specified amount to dealers or brokers, but that the brokerage should not be divided with the purchaser, the allowance mentioned was a brokerage commission, and not a reduction in price, and could not be deducted from the price stated in the certificate.

Dawkins and Overton, JJ., dissenting.

Action by Lufroid Le Blanc against the Godchaux Company, Incorporated. A judgment for defendant was affirmed by the Court of Appeal, and plaintiff applies for certiorari or writ of review. Reversed, and judgment rendered for plaintiff.

Charlton R. Beattie, of New Orleans, for plaintiff.

Milling, Godchaux, Saal & Milling, of New Orleans, for defendant.

Butler & Wurzlow, of Houma, and Numa F. Montet, of Thibodaux, amici curiæ.

By the WHOLE COURT. (In this case, their Honors, the CHIEF JUSTICE, Mr. Justice ST. PAUL, and Mr. Justice LECHE, having recused themselves, Judge T. F. PORTER, Jr., Judge W. W. BAILEY, and Judge ·F. M. ODOM were called in this case.)

PORTER, J. Under a written contract, dated May 20, 1918, wherein the price of sugar cane was fixed at "ninety-five (95) cents per ton for each cent and fraction thereof in proportion of the weekly average price of prime yellow clarified sugar as sold on the New Orleans sugar market during the week of delivery, *said weekly average price to be established by the secretary of the Louisiana Sugar and Rice Exchange of New Orleans*" (italics ours), the plaintiff, Lufroid Le Blanc, sold and delivered to the defendant, Godchaux Company, Incorporated, 1,423.- 5105 tons of sugar cane, on which the plaintiff claims there is due, as a balance of the purchase price, $254.08.

In accordance with the provisions of the contract between the parties, the secretary of the Louisiana Sugar and Rice Exchange, furnished them his certificate, reading in part, as follows:

"I hereby certify that the average price of prime yellow sugar sold on this exchange during the week ending this day was 8.50. * * * See note below.

"Attest: [Signed] D. D. Colcock, Secretary, Per V.

"Note.—To effect sales of clarified and 96 test, an allowance from the above prices of an average of twenty points has been made this week to distributors, in accordance with section 2, circular 11, Louisiana Sugar Committee."

Section 2 of circular 11 reads as follows:

"Any producer may secure the service of a dealer or broker to sell or distribute his sugar under the rules and regulations of the federal Food Administraton and may pay therefor any reasonable compensation not to exceed twenty-five cents per hundred pounds. Any broker or sugar dealer employed by the producer to dispose of his sugar shall not be permitted to divide his compensation or brokerage with, or pay any part of same, to the purchaser to whom he sells."

Settlement for sugar cane sold by the plaintiff to the Godchaux Company, Incorporated, was made on the basis of 8.50 less 20 points, which defendant claims was the actual price at which sugar changed hands on the Exchange, and the amount the plaintiff seeks to recover is represented by the difference between that sum and 8.50, which plaintiff claims the secretary's certificate shows was the selling price of sugar during the week in question.

The trial court rejected oral testimony offered by the defendant to show the selling price of sugar on the Exchange, but, being of the opinion that the certificate of the secretary of the Sugar Exchange showed that the price of sugar was 8.50, less 20 points, plaintiff's demands were rejected. This judgment was affirmed by the Court of Appeal, parish of Orleans, and is now before this court on a writ of review.

[1] The parties in their written contract agreed that the price of sugar was "to be established by the secretary of the Sugar and Rice Exchange," but the manner in which the secretary was to establish the price was not mentioned. In fact, he established the price in the form of a certificate, and in paragraph (6) of "Agreements and Admissions" of the parties, the defendant admitted that the certificate in question was the one "referred to in the contract between the plaintiff and the defendant." Since the parties, in their written contract, agreed upon the source and manner of evidence that was to determine one of the terms of their contract, they are bound by this agreement, in the absence of any claim of fraud, error, or mistake, and parol evidence offered to contradict the terms of the secretary's certificate was properly rejected by the trial judge.

[2] When the secretary of the Sugar and Rice Exchange stated in his certificate to the parties that: "an allowance from the above prices of an average of twenty points has been made this week to distributors, in accordance with section 2, circular 11, Louisiana Sugar Committee," he made section 2 of circular 11, which is quoted in full, supra, just as much a part of his certificate as if he had set it out in its entirety in the certificate itself.

[3] A careful consideration of the secretary's certificate, together with section 2 of circular 11, which in effect is a part of the certificate, leads to the conclusion that the secretary certified to the fact that sugar sold for 8.50; that a sugar manufacturer or "producer" was given the right to "secure the service of a sugar dealer or broker to sell or distribute" the producer's sugar; that the sugar producer might pay such "broker" brokerage or "compensation" not to exceed 25 cents per 100 pounds; and that such broker was prohibited from dividing his compensation with the purchaser of the sugar. In short, the sugar producer was permitted to pay a brokerage to the person moving his sugar. It was, according to the plain terms of the circular of the Louisiana Sugar Committee, the producer of the sugar who was to pay this brokerage, not the purchaser of the sugar. In the note appearing on the secretary's certificate it is stated what this allowance was for, that is, a brokerage, and it was also therein stated who was to pay this allowance or brokerage, that is, the producer of the sugar. Nowhere is it stated that this brokerage was to be deducted from the fixed price of sugar, in order to determine its

selling price. This is exactly the interpretation given the certificate and the circular by the defendant in paragraph (9) of its answer, wherein defendant admitted that the certificate and rule under consideration—

"contemplated the payment of a brokerage such as the broker himself received from the producer, *and such brokerage was not taken into account in fixing a price.*" (Italics ours.)

The defendant having deducted a brokerage of 20 points from the price at which sugar actually sold on the Exchange, when according to a proper interpretation of the certificate, and its own judicial admission, no such deduction should have been made, defendant now owes the amount of such deduction, $254.08, with 5 per cent. per annum interest thereon from January 16, 1919; it being admitted by defendant that, if judgment went against it, and interest was found to be due, same should run from date mentioned.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment here made the subject of review, and that of the trial court which is thereby affirmed, be and the same are hereby annulled, avoided, and reversed.

It is further ordered, adjudged, and decreed that there be judgment herein in favor of the plaintiff, Lufroid Le Blanc, and against the defendant, Godchaux Company, Incorporated, in the sum of $254.08, with 5 per cent. per annum interest thereon from January 16, 1919, until paid; defendant to pay costs of all courts.

PROVOSTY, C. J., and ST. PAUL and LECHE, JJ., recused.

DAWKINS, J. (dissenting). Plaintiff sold to defendant his crop of cane for the year 1918 under an agreement in which the price was to be determined as follows: ·

"In consideration of which the said party of the first part agrees to pay unto the said party of the second part for all cane so delivered —said cane being weighed on the Labarre derrick scale—a certain price per ton of two thousand pounds of cane, which said price shall be, to wit, ninety-five (95) cents per ton for each cent and fraction thereof in proportion of the weekly average price of prime yellow clarified sugar as sold on the New Orleans sugar market during the week of delivery, said weekly average price to be established by the secretary of the Louisiana Sugar and Rice Exchange of New Orleans."

The secretary of the Sugar and Rice Exchange issued weekly certificates, one of which we copy in full, for purposes of illustration to wit:

"New Orleans, La., Dec. 21, 1918.
"To Whom it may Concern:
"I hereby certify that the average price of prime yellow sugar sold on this exchange during the week ending this day was 8.50—2% and 96 test, 7.28 as per government contract. See note below.
"Attest: [Signed] D. D. Colcock, Secretary.
"Notes—To effect sales of clarified and 96 test, an allowance from the above prices of an average of twenty points has been made this week to distributors, in accordance with section 2, circular 11, Louisiana Sugar Committee."

All certificates were of the same general tenor, except as to the price named and the number of points allowed in the footnote, which varied from time to time.

Defendant paid for the cane on the basis of the price mentioned less the number of points (which amounted to so many cents per hundredweight of sugar) shown in the footnotes. Plaintiff protested against these deductions, and this suit is to recover the difference between the prices so paid and the amount which plaintiff claims should have been paid without such allowances on the price of sugar and which reduced proportionately the price of cane.

There was judgment in the district court for the defendant, and the Court of Appeal for the parish of Orleans affirmed that judgment. The Court of Appeal for the First Circuit had rendered a judgment involving the same issues with results directly con-

trary, and the matter is now before us on writ of review.

## Opinion.

It seems to have been a common practice among cane growers and sugar manufacturers to make yearly contracts for the sale and purchase of cane at prices to be governed by the weekly average for which sugar was sold on the New Orleans sugar market. In fact, the original contract in this case was on a printed form, apparently furnished by the defendant with its name printed therein as the purchaser, and blanks provided for the name of the seller, acreage, time of delivery, rate per ton, etc., filled in, but with the method of determining the weekly average price paid for sugar by the secretary of the Sugar and Rice Exchange also printed.

Plaintiff contends that he should be paid for his cane on the basis of the prices for which the secretary certified sugar sold in the body of the certificate, and without regard to the footnotes, for the reason that those footnotes all refer to the provisions of section 2 of circular 11 issued by the Louisiana Sugar Committee, and showing that the allowances were made for brokerage. I also quote the circular as follows:

"United States Food Administration.

"New Orleans, La., October 31st, 1918.

No. 11.

"Rule 1.—The wholesale grocer, jobber, and manufacturer shall have the right at all times to buy sugar direct from the producer or his agent, and no sugar dealer, broker, jobber or other such agency shall be permitted to buy sugar in advance in such quantities as to prevent the exercise of this right.

"Rule 2.—*Any producer may secure the service of a sugar dealer or broker to sell or distribute his sugar under the rules and regulations of the federal Food Administration and may pay therefor any reasonable compensation not to exceed twenty-five cents per hundred pounds. Any broker or sugar dealer employed by the producer to dispose of his sugar shall not be permitted to divide his compensation or brokerage with or pay any part of same, to the purchaser to whom he sells.*

"Rule 3.—The wholesale grocery jobber may secure the services of broker or dealer for purchasing sugar for such wholesale grocery jobber and may pay therefor such compensation as may be agreed upon, not exceeding twenty-five cents per hundred pounds, upon the condition that same shall be paid out of the margin allowed said wholesale grocery jobber.

"Rule 4.—The manufacturer may secure the services of a broker or dealer to purchase sugar for him, and for such services he may pay a compensation not exceeding twenty-five cents per hundred pounds. Any manufacturer whose business does not justify purchasing in carload lots may purchase from any agency authorized to sell to a retailer, or from the producer, but shall not be charged a price exceeding the maximum at which such agency or producer is permitted to sell under rules and regulations of Food Administration to a retailer.

"Rule 5.—Wholesale grocery jobbers or manufacturers may send carlot orders to the Louisiana Sugar Committee, by whom such orders will be alloted to producers or their agents, who will fill such orders at the Louisiana Sugar Committee's list price without cost to or payment by wholesale grocery jobbers, or manufacturers for services in purchasing sugar.

"Louisiana Sugar Committee,
"U. S. Food Administration."

Plaintiff says that this circular, and especially section 2, italicized above, deals with the subject of brokerage and clearly indicates that no brokerage shall be considered in determining the price of sugar; that while the producer, distributor, jobber, purchaser, etc., were permitted thereby to employ brokers for a consideration not to exceed 25 cents per 100 pounds, the one so employing them had to pay their compensation without regard to the price of sugar; and that it was specifically provided that no part of this brokerage should be shared with the purchaser. Plaintiff concludes, therefore, that the footnote and section 2 of circular 11, being read together, clearly show that the allowance made in the footnote was for brokerage.

If this were true, then I cannot see the purpose of the secretary in considering this allowance at all, for the reason that it was a matter entirely between the broker and his employer, and could not in any sense figure

in the price of sugar. Neither the Sugar Exchange nor the sugar-dealing public were concerned in the amount of brokerage paid by any particular dealer, so long as it did not exceed the maximum fixed by the circular. In other words, it could not affect at all the price to be paid by or to any one who had not himself engaged the services of the broker. On the other hand, it seems to be conclusively shown, both by the certificate of the secretary and the testimony of witnesses, that the points mentioned in the footnotes were deducted from the figures in the body of the certificate in determining the price actually paid for sugar on the exchange. Plaintiff objected to the introduction of this evidence on the ground that it would contradict, alter, change, or enlarge the written contract between the parties, including the certificate of the secretary, who was made the arbiter as to what sugar had sold for. I think, however, that the testimony of these witnesses was admissible, not for the purpose of contradicting, varying, or changing it, but for the purpose of corroborating the certificate. The secretary certified that the allowance had been made to effect sales, and it made no difference whether the authority to which he referred for that allowance did or did not justify it. It was the fact of the allowance which was corroborated by the testimony and determined the main fact to which he certified, and that was the average weekly price for which sugar had actually sold on the market.

If this was a contest between the purchaser and the seller as to the price which should be paid for the sugar, the argument of plaintiff would be very pertinent; but it is not. The issue here is between the cane grower and the manufacturer, who agreed that the price which should be paid per ton for cane should be 95 cents per ton "for each cent and fraction thereof in proportion of the weekly average price of Prime Yellow clarified sugar as sold on the New Orleans

sugar market during the week of delivery, said weekly average price to be established by the secretary of the Louisiana Sugar and Rice Exchange of New Orleans."

I think it makes little difference what the contract with the government may have been, or what the legal rights of seller and purchaser might have been with respect to a minimum price for sugar, or what allowances or deductions might have been made or might not have been made as between them. If some producer had sold for half what the others did, and it had been permitted, whatever the lack of authority therefor, the result would have been to lower by that much the average price at which sugar sold during that week, and, I think, under the plain letter of plaintiff's contract, would have been the controlling factor in determining the price which he was to receive for his cane. In other words, I do not feel that we are justified in going afield to ascertain the price at which sugar should have sold. There was but one standard by which the price of cane was to be determined, and that was the price at which sugar actually sold.

For the reasons assigned, I respectfully dissent from the majority opinion.

OVERTON, J., concurs in the dissenting opinion filed by DAWKINS, J.

### On Application for Rehearing.

#### By the WHOLE COURT.

PER CURIAM. In their application for a rehearing the learned counsel for defendant complain of our statement in the opinion which we have handed down that they admitted in their answer to this suit that the certificate rendered by the secretary of the Louisiana Sugar and Rice Exchange, as well as section 2 of circular 11 of the Louisiana Sugar Committee, contemplated the payment of a brokerage, such as the broker himself received from the producer, which brokerage was not taken into account in fixing the

price of sugar. The admission in defendant's answer was, not that the certificate of the secretary of the Sugar & Rice Exchange had reference to a brokerage commission, but that section 2 of circular 11 contemplated the payment or allowance of a brokerage commission only. The admission was a matter of little or no importance, because section 2 of circular 11 was very plain in permitting the so-called "allowance," referred to in the certificate of the Secretary of the Sugar and Rice Exchange, to be made only as a bona fide brokerage commission. The circular expressly forbade that any such "allowance" should be used as a subterfuge, to be called a brokerage commission and to operate as a reduction in price. Therefore, when the secretary of the Sugar & Rice Exchange certified that the so-called "allowance" from the price of sugar had been made "in accordance with section 2, circular 11, Louisiana Sugar Committee," he certified that the so-called "allowance" was not a reduction in price, but a brokerage commission.

With this explanation, the application for a rehearing is denied.