159 So.2d 14 (1963)
PRINCEVILLE CANNING COMPANY
v.
Calhoun B. HAMILTON.
PRINCEVILLE CANNING COMPANY
v.
Joe MORRIS.
No. 5990.
Court of Appeal of Louisiana, First Circuit.
December 16, 1963.
*15 Kilbourne, Dart & Jackson, by Stephen P. Dart, St. Francisville, for appellant.
A. J. Spedale, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
REID, Judge.
These cases were brought by the Princeville Canning Company, a canner of sweet potatoes, against two sweet potato growers, Calhoun B. Hamilton and Joe Morris, for damages resulting from an alleged breach of written contract. By supplemental petition in the Hamilton case the plaintiff sought redress against Hamilton for loss of potato crates. The defendants filed exceptions of no cause or right of action alleging the contracts were vague and indefinite, the contract price provision was indefinite and there was no agreement between the parties as to price. The defendants admitted signing the agreements of sale and admitted the sale of sweet potatoes to another cannery but denied any breach of contract. The two cases were consolidated for trial and for written reasons assigned there was a judgment rendered in each case dismissing plaintiff's suit at its cost. These judgments are not clear as to whether or not they were based on maintaining the exceptions of no right or cause of action or on the merits. However, this is not important as the entire matter is before this Court. It is from these judgments that the plaintiff has appealed.
The issue before this Court arises out of an interpretation of a formal contract prepared by plaintiff which is used by plaintiff in securing sweet potatoes from growers. The pertinent part of the contract reads thus:
"This contract made and entered into this _____ day of _____ 1960, by and between Princeville Canning Company, St. Francisville, La., hereinafter called the Company and the Grower whose name and signature appear above and below, hereinafter called the Grower,
"WITNESSETH:
"The Company agrees to purchase and the Grower agrees to sell and deliver to the Company Plant the Sweet Potatoes covered by the contract, at the prices and in accordance with the laws and conditions hereinafter set forth.
"_____ Bushels of Sweet Potatoes at $1.80 per CWT. Minimum Delivered Price.
"This Contract is for Gold Rush Variety only.
"Contract Prices will Increase According to Market Rise.
"Specifications for Suitable Potatoes."
The underlined provisions are in bold print on the contract.
The defense of these cases is based upon the proposition that the price actually paid for the sweet potatoes was never agreed upon by the parties; that the portion of the contract which reads "contract prices will increase according to market rise" does not fix any definite criteria as to how the price would be determined; that there was no evidence introduced at the trial to show the parties had agreed on a formula for fixing the price; and that the price paid defendants was based not upon market price or market value, but was unilaterally set by the plaintiff without the agreement of defendants.
The Louisiana law is clear that in order to have a valid contract it is necessary there be an agreement between the parties as to price and the price must be *16 fixed and determined by the parties. This is clearly set forth in LSA-C.C. Article 2439 which provides:
"The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price * * * to have the thing itself.
"Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."
and in LSA-C.C. Article 2464 which reads as follows:
"The price of the sale must be certain, that is to say, fixed and determined by the parties.
"It ought to consist of a sum of money, otherwise it would be considered as an exchange.
"It ought to be serious, that is to say, there should have been a serious and true agreement that it should be paid.
"It ought not to be out of all proportion with the value of the thing; for instance the sale of a plantation for a dollar could not be considered as a fair sale; it would be considered as a donation disguised."
As set forth by defendants in their brief, it appears the term "market rise" has no well defined or commonly accepted meaning in law. However, it is clear from a reading of the agreements and from the evidence introduced in this case that what was meant by "market rise" was should the market for sweet potatoes rise to a certain price at a given time, that would be the price to be paid under the contract. The price to be paid under the contract was really the market value or price of the commodity.
"Market value" is defined in Black's law dictionary as follows:
"The market value of an article or piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular article or piece of property."
and has been interpreted by the Louisiana Courts as follows:
"* * * the market valuethat is, a price which would be agreed upon at a voluntary sale between a willing seller and purchaser." City of New Orleans v. Noto, 217 La. 657, 47 So.2d 36, 37.
"* * * the term `market value' means the fair value of the property between one who wants to purchase and one who wants to sell under usual and ordinary circumstances." Henderson v. Dyer, La.App. (1st Cir. 1953) 68 So. 2d 623, 625.
"Market price" is defined by Black's law dictionary as follows:
"The actual price at which the given commodity is currently sold, or has recently been sold, in the open market, that is, not at a forced sale, but in the usual and ordinary course of trade and competition, between sellers and buyers equally free to bargain, as established by records of late sales."
and by American Jurisprudence thus:
"Market price within the meaning of the contract is proved, when possible, by actual sales."
In order for plaintiff to recover it is necessary that either the contract itself show the price is certain, that is, fixed and determined by the parties, or it must be shown by extrinsic evidence that a market price or value had been established by the *17 parties and an agreement had been made between the parties as to how the market value or market price was determined. Being silent as to what market would be used to determine the market rise, or how the market price was to be determined, or by whom the market price was to be determined, the contract here concerned does not in itself fix the price with that degree of certainty required by our law, and therefore, plaintiff must rely upon extrinsic evidence.
Plaintiff alleges it based its determination of the market price upon 15 market reports from the Louisiana Department of Agriculture covering the period of September 20, 1960 to November 15, 1960. The said reports were introduced in evidence and contained under the heading "Sweet Potatoes for Processing" a price quotation representing the low and the high paid that day by canneries throughout the State. According to plaintiff's witnesses, several of the company's men would sit down and establish the company's price, using the said market reports as a guide. They would use the low and the high and take an average of the two to set their price and then they would add the cost of the crate. An example of how this was done, as taken from plaintiff's brief, is as follows:

 ¢
 above
 or
 Princeville Crate below
Date Report No. Low High Average Price Cost average
1960
9/20 13 $2.00 $2.20 $2.100 $2.15 $0.06 +11
9/30 21 $2.00 $2.30 $2.150 $2.15 $0.06 +06
10/4 23 $2.00 $2.60 $2.300 $2.15 $0.06 - 9
10/21 36 $2.00 $2.70 $2.350 $2.15 $0.06 -14
10/23 38 $1.85 $2.55 $2.200 $2.15 $0.06 + 1

Plaintiff argued an examination of the market quotations show that although there was a high and a low, there nevertheless was a market quote and the price could be made certain. Plaintiff pointed out that an examination of the 15 reports shows that throughout the period the plaintiff paid more than the low market price and on six occasions paid more than the average market price. It is upon that schedule plaintiff bases its contention the price was certain. Plaintiff fails to show, however, there was any agreement by both parties to the contract that this was the method to be used to determine the price.
Mr. J. A. Swindler, Jr., the market reporter for the Department of Agriculture testified these reports were published twice weekly, on Tuesday and Thursday; he normally contacted four or five producers and the reports reflected the lowest price paid by one of the canneries and the highest paid by another. Mr. Swindler further testified there were approximately 25 canners in the State but the market report was made up from four to five. It is apparent, however, the four or five used were the larger canneries.
Mr. Gordon Truitt, Chief Executive Officer of the plaintiff, testified plaintiff established the price on Monday for each week and would pay that price until further notice. According to the record plaintiff paid only two prices during the entire season despite the fact the market price reflected in the reports changed almost every day.
Mr. Edward Daniels, plaintiff's manager, testified the company met usually on Saturday *18 and made up the price for the following week. Mr. Daniels testified:
"XQ: The development of the market price is done at Princeville?
"A: As far as we're concerned, the price that we set up is."
An examination of the schedule of market reports set forth by plaintiff in its brief shows regardless of the high or the low, or the average, the plaintiff had a constant price, namely, $2.15, which never varied. Only once during the entire period covered by the reports did plaintiff's price equal the highest price paid. On all other 14 occasions the price paid by plaintiff was below that shown as the highon one occasion by as much as 55¢. It is apparent the $2.15 figure was an arbitrary figure set by plaintiff and bears little relation to the market reports on which it is supposedly based.
In support of its contention that the plaintiff did not base its price upon the market value of the potatoes, defendants introduced evidence to show during the period in dispute another buyer, B. F. Trappery & Sons, Inc., came into the area and offered more for sweet potatoes than plaintiff was paying. The record shows on several occasions while plaintiff was paying $2.15 per crate, B. F. Trappery was offering $2.40 per crate. Further evidence that plaintiff's basis for setting the price bore little relationship to the market price is shown by the testimony of plaintiff's witness Mr. Truitt who testified on November 17 and 18, 1960, he purchased potatoes for plaintiff from a non-contract source for $2.80only two days after the plaintiff, by its own admission, set $2.15 as its contract price.
It is thus apparent from an examination of all the evidence in these cases that the determination of the market rise to be paid was unilaterally fixed by plaintiff without agreement by defendants and although the price was allegedly based upon the market reports of the Louisiana Department of Agriculture, the price remained unchanged during that period despite the fluctuations in the market reports and actually bears no relationship to the market reports. There is nothing in the record to indicate that there was at any time a meeting of minds between plaintiff and defendants as to how the market price was to be determined.
After examining the evidence the Trial Court concluded:
"The conclusion reached by this Court must be that the phrase market rise or market price of sweet potatoes, unqualified and unexplained, cannot provide an objective method by which the price of a sale can be established with certainty. Plaintiff in its brief demonstrates its inability to fix any sum as the market price by suggesting the Court use a theory of fair market price or average market price."
It is the opinion of this Court that this statement of the Trial Court is correct.
Wall v. United Gas Public Service Co., 178 La. 908, 152 So. 561, contains an excellent discussion of the test which should be applied in cases such as this. In that case the Court held:
"The term `market price' does not mean an arbitrary price fixed by the lessee. `Market price' means, according to Webster, `the price actually given in current market dealings.'"
The Court then went on to cite the case of Louisville & Nashville R. R. Company v. R.E.E. DeMontluzin Co., 166 La. 211, 116 So. 854, 855, thus:
"`The market value means the fair value of the property between one who wants to purchase and one who wants to sell, under usual and ordinary circumstances.'
"The `market value' of a commodity is the `price at which the owner of the goods or the producer holds them for sale; the price at which they are freely offered in the market to all the world; *19 such prices as dealers in the goods are willing to receive, and purchasers are made to pay, when the goods are bought and sold in the ordinary course of trade.' Muser v. Magone, 155 U.S. 240, 15 S.Ct. 77, 81, 39 L.Ed. 135. See Words and Phrases, First Series, page 4383, under the heading `Market Value.'"
It is, therefore, the opinion of this Court that the contract sued upon here is so indefinite as to price as to be null and void. We further observe the contract was prepared by plaintiff and it is well established when there is doubt as to its meaning a contract will be construed against the party who formed it. Muse v. Metropolitan Life Insurance Co., La.App., 192 So. 72.
In regard to plaintiff's claim against Hamilton as to crates, we agree with the Trial Court's conclusion that plaintiff failed to offer any proof in this regard.
For the foregoing reasons, the judgment of the Trial Court is affirmed.
Affirmed.