176 So.2d 692 (1964)
SHELL OIL COMPANY
v.
TEXAS GAS TRANSMISSION CORPORATION.
No. 1355.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1964.
On Rehearing June 7, 1965.
Rehearing Denied July 15, 1965.
*694 George C. Schoenberger, Jr., Joseph G. Hebert, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, J. Mort Walker, Jr., Donald P. Endom, New Orleans, and William E. Feldhaus, Owensboro, Ky., for defendant-appellee.
Before SAMUEL, TURNER and BARNETTE, JJ.
SAMUEL, Judge.
This is an appeal by plaintiff from a judgment sustaining defendant's exception of res judicata and collateral estoppel and dismissing plaintiff's suit. The exception was tried under a joint stipulation of facts.
Plaintiff sells gas to the defendant from a field in Cameron Parish under a contract containing a price escalation clause (commonly called a "favored nation" clause) providing that, in the event defendant should enter into a contract after December 31, 1951 for the purchase of gas within 50 miles of the Shell delivery point for a price higher than the Shell price, the Shell price shall immediately increase so that it will equal the price payable under the other contract. The price in the Shell contract was 8.997 cents per m. c. f., plus reimbursement of gathering taxes.
Defendant, through Louisiana Natural Gas Corporation, its wholly owned subsidiary which in 1955 was merged into the parent corporation, was also the buyer in a contract with The Atlantic Refining Company for the purchase of gas from a field in Acadia Parish, within 50 miles of the Shell delivery point under the contract between plaintiff and defendant. The Atlantic contract specified a price for the first five year period and provided that prices for the four succeeding five year periods would be determined by agreement between the parties or, failing such agreement, by arbitration. August 31, 1953 ended a five year period, and by letter agreement dated February 17, 1954 the parties set a new price of 12.2 cents per m. c. f., plus reimbursement of severance and gathering taxes. The new price was made retroactive to become effective on September 1, 1953.
This suit is for the principal amount of $117,584.85, the alleged difference in the two prices for all gas delivered by plaintiff to defendant between September 1, 1953 and June 7, 1954, the latter being the date when the Federal Power Commission, under Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, began exercising jurisdiction over, and regulation of, sales of gas by "independent" producers in interstate commerce. Plaintiff was such a producer. The suit is based on the contention that the new price agreement between defendant and Atlantic was a contract which activated the favored nation clause in the Shell-Texas contract and entitled plaintiff to the same price defendant had agreed to pay Atlantic. The sale of gas under the Shell-contract from September 1, 1953 to June 7, 1954, the period covered by the suit, was not brought under the jurisdiction of the Commission.
After June 7, 1954 the Commission ordered all independent producers to file with it all rate schedules (gas sales contracts) in force on that date and to accompany the schedules with sample billings. In compliance therewith plaintiff filed its rate schedule for the Cameron Parish field with a statement concerning the escalation and *695 accompanied the filing with a sample of the billing under which defendant was making payment, the original price without escalation, and a sample as plaintiff contended payment should be made. The Commission took no action thereon until 1957. Prior to the time any such action was taken, defendant had entered into a contract with Gulf Oil Company for the purchase of gas, within 50 miles of the aforesaid Shell delivery point, providing for a price of 16.75 cents per m. c. f., plus severance and gathering tax reimbursement, which contract defendant recognized as activating the favored nation clause so as to escalate plaintiff's contract to that price. Plaintiff and defendant made the necessary filings of the new rate with the Commission which suspended the new rate pending a hearing to determine whether it was just and reasonable. The Commission felt that it was "* * * necessary in connection with any rate proceeding after suspension of increased rates, * * * that we know the rate previously in effect both for the purposes of the proceeding and in computing refunds if it should turn out that the new rate, or part of it, was not justified." Accordingly, the Commission ordered a hearing to determine the effective rate on June 7, 1954. Both plaintiff and defendant appeared at that hearing.
Plaintiff tendered two issues in support of its claim. The first issue was that the agreement between defendant and Atlantic to sell gas at the new price was a contract to sell gas at a price higher than the Shell price and triggered the favored nation clause. Defendant contended that the Atlantic letter agreement did not meet the requirement of the favored nation clause, but that the clause required a new contract. The second issue tendered by the plaintiff was that even if the favored nation clause required an entirely new contract, the letter agreement between Atlantic and the defendant constituted such a contract since, without it, the pre-existing contract was dead, or at least uninforceable and in suspense, because at the end of the five year period on August 31, 1953, the first Texas-Atlantic contract contained no agreement as to price and in the absence of a price there could be no contract of sale or agreement to sell under Louisiana law.
The Commission's examiner decided that Shell's rate from June 7, 1954 to February, 1957 (the latter apparently being the date of the Texas-Gulf Oil contract) was 12.2 cents per m. c. f. The Commission reversed. The United States Court of Appeal for the Third Circuit reversed the Commission on the first issue and did not reach the second issue. The United States Supreme Court reversed the Third Circuit on the first issue and, because the parties had not briefed and argued that question to the Supreme Court, remanded to the Third Circuit for consideration of the second issue. On remand the Third Circuit then affirmed the Commission and the Supreme Court refused writs. The court cases are Texas Gas Transmission Corp. v. Shell Oil Corp., 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208, and Shell Oil Co. v. Federal Power Comm., 3 Cir., 292 F.2d 149, cert. denied, 368 U.S. 915, 82 S.Ct. 195, 7 L.Ed.2d 131.
The sole question before the Commission and the reviewing courts was whether the letter agreement between the defendant and Atlantic was a contract within the meaning of the favored nation clause in the contract between plaintiff and defendant. This, of course, is exactly the same issue presented by the present suit. The Supreme Court and the Third Circuit held that the letter agreement was not such a contract and that the buyer, Texas, was not required to pay the alleged escalated price.
Defendant now concedes that strict res judicata is not applicable for the reason that there is no identity of causes of action. It does contend that this case is governed by the federal rule of collateral estoppel under the full faith and credit statute and further contends that Louisiana law also recognizes the doctrine of *696 collateral estoppel as announced in California Co. v. Price, 234 La. 338, 99 So.2d 743.
The term "collateral estoppel" is relatively new, having been first used by the American Law Institute, Restatement, Judgments § 68, comment a (1942). The doctrine is not new in the common law where it is referred to under other names. Collateral estoppel is that aspect of res judicata concerned with the effect of a final judgment on subsequent litigation of a different cause of action between the same parties involving the same issue or issues determined in the initial action. Insofar as the same may be applicable here, the doctrine is to the effect that a fact actually litigated by the parties, and determined in an earlier suit by a valid and final judgment, is conclusive as between those parties and their privies in any later suit even though the cause of action was not the same in both suits, provided that the determination of fact was essential to the judgment in the earlier suit. Developments in the Law Res Judicata, 65 Harv.L.Rev. 818, 840 (1952); Comment, 35 Tul.L.Rev. 609, 610-11 (1961); see Cromwell v. County of Sac, 94 U.S. 351, 352-353, 24 L.Ed. 195; Ehrenzweig, Conflict of Laws § 65 (1959); Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 3 (1942).
We are satisfied that collateral estoppel is not part of the Louisiana doctrine of res judicata. In this state res judicata is founded upon LSA-Civil Code Art. 2286, which reads:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality." LSA-C.C. Art. 2286.
With three exceptions, none of which is applicable here, Louisiana courts always have interpreted Article 2286 strictijuris and have rigidly adhered to the necessary presence of all three requirements. The exceptions are petitory actions, partitions and injunctions to arrest executory process. Quarles v. Lewis, 226 La. 76, 82, 75 So.2d 14, 16; Brown Land & Royalty Co. v. Pickett, 226 La. 88, 91, 75 So.2d 18, 19; Hope v. Madison, 194 La. 337, 343, 193 So. 666, 667-668; Pacific Fin. Co. of Caddo v. Benson, La.App., 149 So.2d 239, 243; Taylor v. Williams, La.App., 107 So.2d 319, 321; Comment, 35 Tul.L.Rev. 609, 618; Comment, 2 La.L.Rev. 491, 512.
We do not understand California Co. v. Price, supra, to hold otherwise. It appears to us that all three requirements of Article 2286 were present in Price and that the same result could have been reached by an application of strict res judicata. The "judicial estoppel" mentioned in Price, as shown by its reference to that doctrine in the case of Quarles v. Lewis, supra, was not collateral estoppel as we understand it. We believe nothing more can be said for Price and collateral estoppel in Louisiana beyond that the case may have added a fourth exception, concursus proceedings which involve proceeds derived from real property, or perhaps only from minerals, to our strict construction of res judicata.
However, and we take this position with extreme reluctance for various reasons and particularly because the doctrine appears to be subject to numerous and sometimes nebulous exceptions, under the federal rule of collateral estoppel and under the federal full faith and credit statute we are bound to follow collateral estoppel in the instant case. The statute, 28 U.S.C. § 1738, requires each state to give the same effect to the judgments of state and federal courts as those judgments have in the jurisdictions where rendered. Magnolia Petroleum Co. v. Hunt, 320 U.S. *697 430, 437-438, 64 S.Ct. 208, 88 L.Ed. 149; Stoll v. Gottlieb, 305 U.S. 165, 170, 59 S.Ct. 134, 83 L.Ed. 104; Embry v. Palmer, 107 U.S. 3, 9-10, 2 S.Ct. 25, 27 L.Ed. 346; Horne v. Woolever, 170 Ohio St. 178, 183, 163 N.E.2d 378, 383, cert. denied, 362 U.S. 951, 80 S.Ct. 861, 4 L.Ed.2d 868; Bank of America Nat. Trust & Savings Ass'n v. McLaughlin Land & L. Co., 40 Cal.App. 2d 620, 627, 105 P.2d 607, 612, cert. denied, 313 U.S. 571, 61 S.Ct. 958, 85 L.Ed. 1529. The collateral estoppel division of res judicata is included within the full faith and credit mandate of the statute. United States v. Silliman, 3 Cir., 167 F.2d 607, 612, 620-621, cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379.
The judgments of the United States Supreme Court and of the United States Court of Appeals for the Third Circuit, which have been pleaded by defendant as a bar to plaintiff's attempt to relitigate its "triggering" claim, were rendered in a non-diversity case arising under the laws of the United States. The res judicata effect of federal judgments rendered in non-diversity cases is governed by federal rules of res judicata and collateral estoppel. Heiser v. Woodruff, 327 U.S. 726, 733, 66 S.Ct. 853, 90 L.Ed. 970; United States v. Silliman, supra.
Plaintiff argues that collateral estoppel is inapplicable in the instant case for three reasons: (1) the first tribunal was without jurisdiction to grant the relief now sought; (2) the point here in issue was decided in the first tribunal only incidentally as a means of reaching another operative or ultimate fact; and (3) the issue determined in the first tribunal was not one of fact but of law, to which latter neither the common law nor the federal law of collateral estoppel applies.
It is quite true that the Commission does not have jurisdiction to render a money judgment. Montana-Dakota Util. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912. But this is immaterial. The doctrine of collateral estoppel presupposes different causes of action. Its operation does not depend on identity of remedies; if all other requirements are met, identity of parties and issues is sufficient. See Myers v. International Trust Co., 263 U.S. 64, 44 S.Ct. 86, 68 L.Ed. 165. Here, with a single exception, the prior judgments do not bar any cause of action which plaintiff may have under its contract with the defendant for money due for periods either before or after June 7, 1954, the exception being any action dependent upon relitigation of the issue decided by those prior judgments. Under the doctrine of collateral estoppel the judgments are decisive of the triggering issue and the same may not again be litigated by either party against the other. The important considerations are that the Commission and the reviewing courts did have jurisdiction to decide the issue and the issue was litigated contradictorily by the present parties before a competent tribunal.
We also reject plaintiff's second argument, that the point in issue was decided in the first tribunal only incidentally to what plaintiff describes as the incidental determination of the June 7, 1954 rate. In this connection plaintiff seeks to invoke Section 71 of the Restatement of Judgments, which provides:
"Where a court has incidentally determined a matter which it would have no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly."
While the Commission did not assert its authority to supervise rates of independent gas producers until June 7, 1954, it did have such authority under the Natural Gas Act since that act became law in 1938. Phillips Petroleum Co. v. Wisconsin, supra; see Magnolia Petroleum Co. v. Federal Power Comm., 5 Cir., 236 F.2d *698 785, 791, cert. denied, 352 U.S. 968, 77 S.Ct. 356, 1 L.Ed.2d 322. The selection of a particular date on which to begin exercising that authority was discretionary with the Commission which could have chosen any other date from 1938 forward. Amerada Petroleum Corp. v. Federal Power Comm., 10 Cir., 231 F.2d 461, 465. And the Commission's action, as finally upheld by the Supreme Court, in not recognizing the Atlantic letter agreement as escalating the favored nation clause effectively established the rate between June 7, 1954 and 1957. We are satisfied that it was not merely incidental but necessary for the Commission to determine the contract price existing between plaintiff and defendant on June 7, 1954 in order to carry out its duties under the act and the only question involved in that determination was the effect of the Atlantic letter agreement on the favored nation clause.
When called upon to apply Section 71 of the Restatement of Judgments as an exception to the federal rule of collateral estoppel, the federal courts have indicated that Section 71 is inapplicable where the first court lacked competence to decide the question. See United States v. Silliman, supra; Vanderveer v. Erie Malleable Iron Co., 3 Cir., 238 F.2d 510. Thus, in Silliman the court said that the exception applies only in those cases in which the litigants have not been previously "* * * afforded a full opportunity to litigate the matter before a tribunal having those qualities we ordinarily attach to a law court." In Vanderveer the court refused to apply Section 71 pointing out: "The section, as the comments appended to it indicate, is primarily directed to cases involving title to land in another state, which has always been regarded as presenting a special case, and to cases in courts of limited jurisdiction." There is no question here about competence of the prior tribunals.
The simple answer to plaintiff's third argument, that the issue determined in the first tribunal was not one of fact but of law, is that the issue was one of fact. A reading of the opinion of the United States Supreme Court makes it clear the conclusion that the Atlantic letter agreement did not escalate the favored nation clause was reached by determining the actual intent of the parties to the Shell-Texas contract. At page 272 of 363 U.S., at page 1128 of 80 S. Ct., the court said:
"In the light of this, we do not think that in being party to the letter agreement Texas Gas `enter[ed] into a contract for the purchase * * * of gas' within the meaning of those words as employed by the parties in the `favored nation' clause. The language of that clause of the Shell contract is virtually the same as the parties used several times at the outset of that contract. The sense in which the parties used the language there reveals its meaning in the `favored nation' clause and, so interpreted, the Atlantic letter agreement is not a `contract' within the meaning of the clause."
The court considered phraseology used in other Shell contracts with favored nation clauses in determining the intent of that clause in the Shell-Texas contract.
There is no doubt in our minds that the determination of the actual intent of the parties to a contract is a determination of fact and not of law. See S. S. Kresge Co. v. Sears, 87 F.2d 135, 140, 110 A.L.R. 583; 3 Corbin, Contracts § 554 (1960).
Our attention has not been called to any exception to the doctrine of collateral estoppel which would make that doctrine inapplicable in the instant case and we know of none.
The judgment appealed from is affirmed.
Affirmed.

*699 ON REHEARING
Before McBRIDE, YARRUT, SAMUEL, CHASEZ and BARNETTE, JJ.
SAMUEL, Judge.
We granted this rehearing limited to the question of whether the pertinent issue determined in the first tribunal was one of fact or of law and, in either event, whether that determination is binding in the instant case under the doctrine of collateral estoppel.
As pointed out in the original opinion, the sole question before the Commission and the reviewing courts was whether the 1954 letter agreement between the defendant and Atlantic, executed under a prior agreement between those companies calling for a renegotiation of the contract price after each of several succeeding five year periods, was a contract within the meaning of the escalation clause contained in the contract in suit between plaintiff and defendant, thus triggering an automatic readjustment of the contract price of plaintiff's gas to a level equal to a price paid by defendant to Atlantic. The same issue is presented in the present suit.
Under the doctrine of collateral estoppel a decision in the prior forum on an issue of law is not binding in subsequent litigation between the same parties on a different cause of action; the doctrine only applies to previously decided questions of fact. Friend v. Talcott, 228 U.S. 27, 33 S.Ct. 505, 57 L.Ed. 718; Cf. Myers v. International Trust Co., 263 U.S. 64, 44 S.Ct. 86, 68 L.Ed. 165.
We reached the conclusion in our original opinion that a question of fact and not of law was determined by the Commission and the reviewing courts because the Supreme Court's decision, that the letter agreement was not such a contract as to trigger the operation of the escalation clause, was based essentially on the intention of the parties as evidenced by their written agreement. On more mature consideration and after again carefully reading the cases, we are of the opinion that we were in error.
While the Supreme Court (Texas Gas Transmission Corp. v. Shell Oil Co., 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208) concluded the letter agreement did not trigger the escalation clause, it nevertheless remanded the case to the Third Circuit for the purpose of determining whether the Atlantic-Texas Gas contract of 1943 was enforceable despite the fact that no definite price had been agreed upon for the four subsequent five year periods. The primary consideration on remand was whether the contract was invalid for lack of a definite agreement as to price under LSA-Civil Code Art. 2456. This action was not inconsistent with the Supreme Court's holding; a reference to footnote 11 thereof reveals the court reasoned that if the 1943 contract between Atlantic and Texas Gas was not enforceable because it lacked a definite price, then the letter agreement of February, 1954 was not really an appendage to the 1943 contract, but rather constituted a completely independent contract which would trigger the escalation clause in the contract between the plaintiff and the defendant. In other words, since the contract between the present litigants provides for a price escalation in the event the defendant enters into another contract after December 31, 1951 for the purchase of gas within 50 miles of the plaintiff delivery point for a price higher than the price paid by defendant to plaintiff, the letter agreement of February, 1954, a date subsequent to December 31, 1951, would trigger the escalation clause if that letter agreement constituted a completely new contract; if the letter agreement only formed part of the 1943 contract between Atlantic and the defendant, it would not trigger the escalation clause because the 1943 contract, of course, antedated December 31, 1951. The question of whether or not the letter agreement was a completely new contract was dependent only on whether the 1943 contract was valid and enforceable.
*700 A reading of the opinion of the Third Circuit on remand (Shell Oil Co. v. Federal Power Comm., 292 F.2d 149, cert. denied 368 U.S. 915, 82 S.Ct. 195, 7 L.Ed.2d 131) reveals that the court decided the 1943 contract between Atlantic and Texas Gas was binding irrespective of the lack of a definite price established therein for the four succeeding five year periods. The court was required to determine from the language contained within the four corners of the contract whether it was enforceable and no substantial reference was made to the intention of the parties, except to say that they intended to have binding prices throughout the entire term of the contract. Such a consideration of the enforceability of a contract is a question of law, to which the doctrine of collateral estoppel has no application.
Since the Supreme Court decided as a fact that the letter agreement between Atlantic and Texas Gas did not of itself activate the escalation clause in the contract between the plaintiff and the defendant, we conclude the parties hereto are precluded from relitigating that question. However, the Supreme Court's holding assumes the validity of the 1943 contract between Atlantic and Texas Gas without specifically so deciding. The case was remanded to the Circuit Court of Appeals for decision on this question. The decision of the Third Circuit upholding its enforceability is based upon a question of law. Therefore, collateral estoppel does not preclude the relitigation of this issue and the defendant's exception must be overruled insofar as it pertains to the validity and enforceability of the 1943 contract between Atlantic and the defendant.
For the reasons assigned, both on rehearing and in the original opinion insofar as the latter are not in conflict with this opinion, our original decree is recalled and set aside, the judgment appealed from is now reversed, the defendant's exception is overruled, and this case is remanded to the trial court for further proceedings in accordance with law and in conformity with the views expressed herein; all costs to await a final determination.
Original decree recalled; judgment reversed and case remanded.