210 So.2d 554 (1968)
SHELL OIL COMPANY
v.
TEXAS GAS TRANSMISSION CORPORATION.
No. 2837.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1968.
Rehearing Denied June 10, 1968.
*555 Joseph G. Hebert and George C. Schoenberger, Jr., New Orleans, for Shell Oil Co., plaintiff-appellee.
J. Mort Walker, Jr., and Thomas G. Rapier, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for Texas Gas Transmission Corp., defendant-appellant, Robert O. Koch and Steve H. Finch, Owensboro, Ky., of counsel.
Before SAMUEL, CHASEZ and JANVIER, JJ.
CHASEZ, Judge.
Defendant, Texas Gas Transmission Corporation, has appealed a judgment awarding Shell Oil Company $117,584.85, representing the balance due by defendant for gas delivered to it between September 1, 1953 and June 7, 1954 under a gas sales contract. This is the second time this case is before us on appeal. In the first appeal, we reversed an opinion of the trial court dismissing defendant's plea of collateral estoppel and remanded the matter for trial on the merits. The facts are not disputed and those pertinent to the issues now before us for determination were succinctly set forth in our first opinion in Shell Oil Company v. Texas Gas Transmission Corp., 176 So.2d 692, at 694:
"Plaintiff sells gas to the defendant from a field in Cameron Parish under a contract containing a price escalation clause (commonly called a `favored nation' clause) providing that, in the event defendant should enter into a contract after December 31, 1951 for the purchase of gas within 50 miles of the Shell delivery point for a price higher than the Shell price, the Shell price shall immediately increase so that it will equal the price payable under the other contract. The price in the Shell contract was 8.997 cents per m. c. f., plus reimbursement of gathering taxes.
"Defendant, through Louisiana Natural Gas Corporation, its wholly owned subsidiary which in 1955 was merged into the parent corporation, was also the buyer in a contract with The Atlantic Refining Company for the purchase of gas from a field in Acadia Parish, within 50 miles of the Shell delivery point under the contract between plaintiff and defendant. The Atlantic contract specified a price for the first five year period and provided that prices for the four succeeding five year periods would be determined by agreement between the parties or, failing such agreement, by arbitration. August 31, 1953 ended a five year period, and by letter agreement dated February 17, 1954 the parties set a new price of 12.2 cents per m. c. f., plus reimbursement of severance and gathering taxes. The new price was made retroactive to become effective on September 1, 1953.
"This suit is for the principal amount of $117,584.85, the alleged difference *556 in the two prices for all gas delivered by plaintiff to defendant between September 1, 1953 and June 7, 1954, the latter being the date when the Federal Power Commission, under Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, began exercising jurisdiction over, and regulation of, sales of gas by `independent' producers in interstate commerce. Plaintiff was such a producer. The suit is based on the contention that the new price agreement between defendant and Atlantic was a contract which activated the favored nation clause in the Shell-Texas contract and entitled plaintiff to the same price defendant had agreed to pay Atlantic. The sale of gas under the Shell contract from September 1, 1953 to June 7, 1954, the period covered by the suit was not brought under the jurisdiction of the Commission."
The trial court concluded the original Atlantic-Texas contract expired on September 1, 1953 because the price redetermination clause therein set no standard that would bind the parties in negotiations to redetermine the price. Therefore, the 1943 agreement of sale became invalid after August 31, 1953 because the price was not definite. Thus, the trial court reasoned, the February 1954 letter agreement constituted a new contract which, in turn, triggered the favored nations clause of the Shell contract. Accordingly the trial court rendered judgment in favor of plaintiff for $117,584.85.
Although counsel for defendant has reurged its argument on collateral estoppel, and presumably did so at the trial on the merits, we conclude that this issue was not properly before the trial court and will not be considered again by us on appeal. That question became final in this court when the application for rehearing from the opinion on rehearing was refused.
The question before us on appeal resolves itself to this: Was the February 1954 agreement a new contract or was it merely a redetermination of price under provisions of the 1943 agreement by which buyer and seller were mutually bound in reaching a new price?
If, after August 31, 1953, either Atlantic or Texas could have compelled enforcement of the 1943 agreement, then the original contract continued in full force and effect and the price redetermination agreed upon in February 1954 did not constitute a new contract of sale. Conversely, if neither buyer nor seller had any enforceable rights under the original agreement after August 31, 1953, then the February 1954 letter was a new contract.
Under the 1943 contract, Atlantic was committed to sell the entire gas production in the North Tepetate pool in which it had an interest for a period of 25 years. Texas Gas was required to buy all that was delivered. Recognizing the impossibility of fixing a price that would assure the seller a fair return over a 25 year period, because the effects of inflation were mere conjecture when the contract was drawn, the parties included the following provision for redetermining price at the end of each five year period of the agreement.

"III.

* * * * * *
"(b) At the end of the first five-year period, Buyer and Seller are to reach an agreement as to the price for gas sold and delivered under this contract during the second five-year period. The price to be paid during such second five-year period is to be agreed upon at the beginning of such period after a survey of prevailing prices for gas being sold in similar quantities in the southwestern part of Louisiana.
"(c) During succeeding five-year peiods, prices to be paid will be determined at the beginning of each period in the same manner as provided for in paragraph (b) above.

*557 "(d) In the event that the parties are unable to agree upon the price to be paid for gas after the first five-year period, in accordance with the arrangements set forth in paragraphs (b) and (c) above, such determination shall be submitted to arbitration in accordance with Condition XII."

* * * * * *
The arbitration referred to is quoted as follows:
"In case the parties hereto shall be unable to agree on any question or dispute arising under this contract, such question or dispute shall be referred for settlement to three arbitrators, one appointed by Seller, one appointed by Buyer, and the third appointed by the two others so chosen. The party desiring such arbitration shall notify the other and in such notice shall name an arbitrator, the arbitrator to be appointed by the other party shall be named within ten (10) days after receipt of such notice of arbitration, and an additional arbitrator shall, within ten (10) days of the appointment of the second arbitrator, be selected by the two (2) arbitrators theretofore appointed, but if one of said parties shall have failed to appoint an arbitrator within the time provided herein, it is expressly understood and agreed that the sole arbitrator shall arbitrate the question alone. If arbitrator shall have been appointed by the respective parties and shall have failed to select the third arbitrator within the above stated time, the third arbitrator shall be appointed by the senior Judge of the 5th Federal Judicial Circuit upon application therefor by either of said parties to the arbitration.
"The matter in question or dispute shall be submitted in writing to the arbitrators immediately upon the completion of their appointment, and the parties shall do all things necessary to make proper submission thereof according to the character of the question or dispute involved, or as required by the arbitrators. The decision in writing signed by a majority of the arbitrators shall be final and conclusive with respect to the matter submitted and the parties hereto agree to accept and abide by the same. * * *"
Defendant contends "* * * the 1943 Atlantic Contract was enforceable through out its 25 year term because its pricing provision, coupled with the arbitration clause, constituted a valid, workable pricefixing standard."
The validity of defendant's position may be tested by referring to certain articles of the Civil Code concerning the contract of sale and the jurisprudence interpreting these articles.
The definition of a sale is found in Article 2439. It states:
"The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
"Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."
Insofar as the element of price is concerned, the Code requires it must be fixed and definite. Article 2464 provides in part:
"The price of the sale must be certain, that is to say, fixed and determined by the parties."

* * * * * *
The following codal provision, Article 2465, qualifies Article 2464 in stating that the buyer and seller may agree to leave determination of price to a third party. It reads:
"The price, however, may be left to the arbitration of a third person; but if such person can not, or be unwilling to make the estimation, there exists no sale."
*558 Applying these articles to the instant case, we cannot agree with defendant's contention that the renegotiation clause contained sufficient standards to bind future negotiators in arriving at a new price when time for redetermination came. The contract simply directed the parties to agree upon a price after a survey of "* * * prevailing prices for gas being sold in similar quantities in the Southwestern part of Louisiana." While the designation the "Southwestern part of Louisiana" possibly has a definite and certain meaning in the oil and gas industry, in our view, the term "prevailing prices" is too indefinite to establish a certain price without reference to some specific market. This is borne out by the record which establishes that at the time of renegotiation, gas sold for as low as 8 cents per thousand cubic feet and as high as 16 cents per thousand cubic feet in the Southwest Louisiana area.
A similar pricing provision was determined to be too indefinite to support enforceability in Princeville Canning Company v. Hamilton, La. App., 159 So.2d 14. In that case a canner of sweet potatoes sued two potato farmers for damages for an alleged breach of a contract to sell potatoes. The contract specified a minimum delivered price of $1.80 per bushel and further provided that "contract prices will increase according to market rise". Because the contract did not specify how market rise would be determined or what market would be used to determine "market rise", the court concluded that the contract in itself did not fix the price with that degree of certainty required by Civil Code Article 2464.
Our jurisprudence has recognized the validity of contracts of sale that do not specify the price within the corners of the agreement when the parties indicate an intent to be bound by a future price that is readily ascertainable. For example, sugar that was sold at the average price of sugar sales on the New Orleans market during the week of delivery was treated as a valid contract of sale with a fixed price. See LeBlanc v. Godchaux Co., 152 La. 405, 93 So. 201 and J. P. Hudson & Sons Co. v. Godchaux Co., 166 La. 912, 118 So. 81.
Having concluded the pricing provision in the 1943 Atlantic contract is too indefinite in itself to bind the parties under the terms of the original agreement, we turn to defendant's alternative contention that the pricing provision, coupled with the arbitration clause, did make the price a certainty upon each renegotiation.
For clarity we reiterate the salient provisions of the Atlantic contract pertaining to arbitration. The price fixing clause provides that if negotiators representing the contracting parties cannot agree upon a price, it shall be determined by arbitration. The procedure outlined for arbitration in condition XII of the contract, quoted supra, allows each party to appoint an arbitrator. If either party fails to do so within a specified time, the arbitrator appointed by the party initiating the arbitration proceeding may determine the question alone. If both parties appoint an arbitrator, the two named are required to appoint a third arbitrator. In the event the arbitrators appointed by the parties cannot agree upon the third man, the clause provides that either party may apply to the senior judge of the Fifth Federal Judicial Circuit who shall appoint the third.
After detailing the rules for appointing arbiters, the clause provides for submission of the disputed issue and then states: "The decision in writing signed by a majority of the arbitrators shall be final and conclusive with respect to the matter submitted and the parties hereto agree to accept and abide by the same. * * *"
Defendant asserts the above outlined provision amply satisfies the codal requirement that the price in a sales contract be certain. The instrument is drawn to insure a price determination on renegotiation to which both parties will be bound; therefore, it is valid under the provisions of Civil Code *559 Article 2465 that permits the fixing of price by a third party or parties.
Defendant relies on the case of Louis Werner Sawmill Co. v. O'Shee, 111 La. 817, 35 So. 919 to support the foregoing argument.
That case involved a contract for the sale of timber at $1.50 per thousand feet, and the quantity to be sold was to be determined by two estimators, one appointed by the seller and the other, by the buyer. The estimators could not agree as to quantity and the Court concluded there was no contract because the price was not certain. In discussing the validity of a contract of sale wherein the parties leave the fixing of price to experts, the Supreme Court adopted the French commentators' analysis of Article 1592 of the Code Napoleon, the exact counterpart of our Civil Code Article 2465. The opinion states in part:
"The case being one, then, where the parties have agreed that the amount of the price should be determined and fixed by the agency of estimators or experts to be thereafter named by themselves, the question is whether such a contract is valid as a sale, for it is as a sale that plaintiff is seeking to enforce it.
"With the exception of Duvergier (volume 1, No. 155) and one or two of the less authoritative writers, the French commentators on the Code Napoleon (article 1592, the exact counterpart of our article 2465) seem to agree that, if the price is left to be determined and fixed by experts to be named by the parties, the contract is null, since either of the parties has it in his power to nullify it by refusing to appoint the expert. See particularly Delvincourt, vol. 3 p. 65, note 7; Duranton, vol. 16, No. 114; Troplong, Comm. on art. 1592, No. 157; Marcade, same article, No. 2; Aubry et Rau, vol. 3, p. 232, note 19; Laurent, vol. 24, No. 76; Baudry-Lacantinerie, vol. 3, No. 464.
"And to the same effect are the decisions of the courts. See, particularly, the case of Grosjean c. Tissier, Journal du Palais, 1894, part. 2, p. 144, and the footnote, where it is said: `It is now generally admitted that a sale made in consideration of a price to be determined by experts to be thereafter appointed has no binding character.' Citing Cassation, 31 Mars, 1862; Grenoble, 1 Juin, 1865; Rennes, 26 Jan. 1976; Bordeaux, 6 Fev. 1878; Dijon, 15 Dec. 1881. See, also, Limoges, 4 Apr. 1826; Toulouse, 5 Mars, 1827.
"If, however, the parties do name the experts, and the latter do fix the price, this perfects the sale. Cass. 31 Mars, 1862; Aubry & Rau, vol. 4, p. 337 § 349, note 28; Laurent, vol. 24, No. 76.
"But if the parties do not name the experts, the court is without authority to do so. Same decision of Grosjean c. Tissier, supra cit.; Dijon, 15 Fev. 1881; Aubry & Rau, vol. 4, p. 337; and the other commentators cited above.
"`What is essential' says Marcade, Comm. on art. 1592, C.N., "is that the parties should have bound themselves in such way that the price may be thereafter determined as a mere consequence of the consent given by them, without any new act of volition on their part. If, for example, after the parties had said that the sale was made for a price as to which they would agree thereafter, they added, or which, in case of disagreement, should be fixed by an expert to be appointed by the parties themselves or by the judge of the district, it is clear that there would be a sale, since it would no longer be within the power of the parties to prevent the fixing of the price. The result would be the same if, without expressing themselves thus explicitly, the parties had, however, manifested the idea of leaving matters to the courts, if need were, to name one or more experts; but, when nothing indicates such a consent, the fixing of the price will have to be by the expert or experts that the parties will have designated, and if one of them refuses, *560 or dies, or is unable to make the estimation, there will be no sale, the condition upon which it depended not having materialized.'
"`It will be said, perhaps,' says Troplong, Comm. on same article, `that the default [of the party to the contract] to name the expert may be righted by the courts. But if nothing in the contract indicates that, in the event of refusal by one of the parties, the courts shall name the experts, it is not permissible to substitute the act of the court to that which should be the voluntary act of the contractants themselves, or of those to whom they have intrusted the fixing of the price. The contract, then, must not be added to, and the parties be compelled to submit to a fixing of price to which they have not dreamed of subjecting themselves.'"
In our view the French commentators conclude that if the parties have bound themselves in such a way that price may be later determined as a consequence of their consent without any new act of volition on their part, then the price is certain and the sale is valid.
Applying that test to the instant case, we are of the opinion that the arbitration provision in the 1943 Atlantic contract binds the parties to accept a price to be fixed in the future by experts. The agreement cannot be frustrated by future action or omission of either party. It will be recalled that if either refuses to appoint an arbitrator, the parties bind themselves to the decision of one arbitrator appointed by the party initiating proceedings.
Plaintiff contends that the failure to name the arbitrators within the original contract is a fatal defect in the arbitration clause. Arbitration, under the contract, is not inevitable because, plaintiff argues, either might refuse to appoint an arbitrator, thus the contract does not insure arbitration will take place in the event of disagreement on price.
In our view this observation is without merit. If the contracting parties through negotiation could not agree as to price, the fact that neither set the arbitration machinery in motion would be tantamount to a mutual agreement to rescind the contract.
Plaintiff further points out that if arbitration is initiated under the provisions of Condition XII, "* * * at least one party must select an arbitrator and this is that further exercise of will or `new act of volition' which the Werner Sawmill case said prevents a price from being definite".
We do not read this interpretation into the Werner decision. In this case, the parties have bound themselves to a price that is to be determined by experts and the contract in its original form assures that a price will be reached by arbitration, whether it be determined by one arbitrator or the majority of a three man panel. If either party through a new act of volition could defeat arbitration, we would conclude the price was indefinite in conformity with the Werner Sawmill rationale.
In the Werner case, the contract provided only for two estimators, one to be appointed by each party. When the experts disagreed, the price could not be established by any procedure outlined within the original agreement. We believe the "new act of volition" referred to in that opinion meant the parties would have to agree to a different method of price determination not considered in drawing the first contract.
We therefore conclude that the arbitration clause incorporated in the 1943 Atlantic contract provided a method by which a price could be determined by third parties in future negotiations, one that could not be frustrated by any act of commission or omission of either buyer or seller. Even though the standard in determining the price was vague in stipulating it would be set in reference to "prevailing prices", this too could be determined in arbitration proceedings by which the parties had agreed to *561 be bound in the original contract. We have considered plaintiff's argument that fixing of price is not an "either or" proposition and counsel's conjecture that it is highly possible all three would reach different determinations with the end result that a majority of two would not agree to the same price. We reject this supposition as unrealistic. In the Werner Sawmill case, which indicates to us that an arbitration clause similar to the one now before us would have been valid, the object of the sale was timber and the uncertain element was the quantity. This likewise was not an "either or" proposition, yet, the Court indicated that had the contract provided for arbitration insuring that a fixed price could be reached in future negotiations, then it would have been a valid agreement with a definite price.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of defendant dismissing plaintiff's suit at its cost. Plaintiff is to pay all costs.
Reversed and rendered.